State *v.* Neal.

### STATE OF MAINE *versus* NEAL.

Of *express* and *implied* malice.

In an indictment for a felonious assault with intent of his malice afore-thought to kill and murder, to sustain a conviction of the party charged, the evidence must be such that if *death had ensued,* he would have been guilty of *murder.*

The *intent* charged must be specifically proved.

INDICTMENT, for a felonious assault.

The defendant was convicted, and moved to set the verdict aside as being against evidence and the weight of evidence.

The indictment and the testimony are set forth in the opinion of the Court.

*Neal,* for the prisoner, maintained, that the evidence on the trial did not authorize the finding of the jury; that, 1st, it should appear from all the circumstances that the *intention* of murder existed in order to uphold the verdict. *Regina* v. *Cruse and Mary his wife,* 8 Carr. & Payne, 541, (34 C. L. 522); *Regina* v. *Jones,* 9 Carr. & Payne, 258, (38 C. L. 109); Roscoe's Crim. Ev. 775 and 784.

2. The intent must be proved as laid; malice is an essential ingredient. Roscoe's Crim. Ev. 784 and 785; *Mytton's case,* 1 East, P. C. 411 and 412; 1 Russ. on Cr. 385; 1 East, P. C. 400.

3. There is a distinction between an assault with intent to kill, and an assault with intent to murder, which if observed in this case, the defendant could not have been convicted of the indictment. *State* v. *Parmelee,* 9 Conn. 259; *State* v. *Nichols,* 8 Conn. 496.

4. The intent must be alleged and proved, because it is prescribed by statute. *People* v. *Enoch,* 73 Wend. 173; *People* v. *Allen,* 5 Denio, 76; *Commonwealth* v. *Tuck,* 20 Pick. 362; *King* v. *Phillips,* 6 East, 473.

*Deane,* County Att'y, cited 4 Dallas, 176; also 9 Cush. 108.

State *v.* Neal.

CUTTING, J. — The defendant was indicted on the 29th § of the R. S., c. 154, which provides, that "if any person, being armed with a dangerous weapon, shall assault another, with intent to murder, kill, maim, rob, steal, or to commit arson or burglary, he shall be punished by imprisonment in the State prison, not more than twenty years."

The indictment consisted of two counts. The first stated, that the defendant, "with force and arms in and upon the body of one Mark E. Jose, wickedly, violently and feloniously, did make an assault, he, the said James Neal, being then and there armed with a dangerous weapon, to wit, a certain pistol loaded with gunpowder, which he, the said James Neal, then and there had and held in his right hand, with intent him, the said Mark E. Jose, then and there feloniously, wilfully and of his malice aforethought to kill and murder."

The second count was similar to the first, with the further allegation, that the pistol was loaded with gunpowder "and a leaden ball."

The defendant was convicted on both counts, and, after verdict, moved in arrest of judgment and for a new trial, because the verdict is against evidence, the weight of evidence and the instructions of the presiding Judge.

The instructions have not been presented and we are to consider the motion only in reference to the first two causes assigned.

The indictment substantially charges an assault with the intent to murder, containing all the special averments necessary to constitute that crime; such as, wickedly, feloniously and of *his malice aforethought*. So, that the question presented is, had death ensued from the assault of the defendant, would he, from the evidence, have been guilty of murder? If otherwise, he was wrongfully convicted and a new trial should be granted.

Murder, by statute, is defined to be, the unlawful killing of any human being, with malice aforethought, either express or implied.

The common law definition of *express* malice is, when one

with a sedate and liberal mind, and formed design, does kill another, which formed design is evidenced by external cir-cumstances, discovering the inward intention; as lying in wait, antecedent menaces, former grudges, and concerted schemes to do him some bodily harm.   1 Hale, 451 ; 4 Bl. Com. 199 ; 1 Russ. on Crim. 482.

Malice is *implied* by law from any deliberate, cruel act, committed by one person against another, suddenly, without any, or *without* a considerable provocation.   And all homi-cide is, as a general rule, presumed to be malicious, until the contrary appears from circumstances of alleviation, to be made out by the prisoner, unless they arise out of the evidence produced against him.   1 Russ. on Crim. 183, and authorities there cited.

But this presumption is founded on the rule, that every person is presumed to contemplate the ordinary and natural consequences of his own acts, and is applicable to cases where death actually ensues; for if otherwise, then the presumption must be otherwise; and if no consequences follow the act, the presumption must be, that no consequen-ces were intended or contemplated.

It is not pretended, that the evidence produced at the trial proved *express* malice, according to the definition of that term.   Did it prove any acts or circumstances from which malice aforethought might be *implied ?*

Where an indictment is preferred for an assault with an attempt to commit murder, it seems that the attempt *as laid,* must be fully established, in order to support the indictment.   1 Russ. on Crim. 719 ; 1 East, P. C. 411.

The *intent* charged, which forms the gist of the offence, must be specifically proved.   Whar. Crim. Law, 316 ; 3 Greenl. Ev. § § 13, 17.

And this brings us to the consideration of the testimony, as bearing upon the defendant's malicious intention to com-mit murder, when controlled by the rules of law, and ex-plained by the circumstances of alleviation, already referred to.   Up to within a few minutes of the assault, there does

not appear to have subsisted between the defendant and Mr. Jose, feelings other than friendly. The possession of the pistol is accounted for and seems, at this time, to have been accidental. The defendant's object in visiting the Elm House was to see an acquaintance, for whom he first made inquiries of the clerk, and subsequently of Mr. Jose; a dispute arose, which led to loud words and harsh epithets, introductory to the general melee, which terminated in the attempt forcibly to eject the defendant from the house, his resistance and discharge of the pistol. Here a sudden quarrel had arisen, "and it must be observed, (to use the words of a learned commentator,) with regard to sudden rencounters, that when they are begun, the blood too much heated, kindles afresh at every pass or blow; and in the tumult of the passions, in which mere instinct, self-preservation, has no inconsiderable share, the voice of reason is not heard; therefore the law, in condescension to the infirmities of flesh and blood, has extenuated the offence."

Such are the circumstances of alleviation arising out of the evidence produced for and against the defendant, which in our opinion are sufficient to repel the presumption of previous malice, and although the assault may have been highly aggravated, and may subject the perpetrator to a severe penalty, still the evidence does not disclose a sufficient degree of turpitude to prove the crime charged.

The 29th § embraces seven separate and distinct offences, each differing in degree and calling for a penalty more or less severe, according to the crime charged, to be inflicted on the guilty. An assault with intent to murder, is an offence more heinous, than an assault with intent to kill, since it discloses greater depravity; and since the Court in pronouncing sentence look principally to the record, it becomes all important that the record should speak the truth.

*Motion sustained, verdict set aside, and, a new trial granted.*

SHEPLEY, C. J., and HOWARD, RICE and HATHAWAY, J. J., concurred.