STATE *vs.* CHARLES B. GILMAN.

Kennebec. Opinion February 7, 1879.

*Indictment. Intent. Presumption. Defense of Property.*

Where one discharges a loaded gun into a crowd, intending to kill A, but kills B, he is guilty of murder.

So, if intending to kill and murder A, and, missing him, he wounds B, he may be convicted of an assault with intent to kill and murder B.

A sane man must be presumed to intend the necessary and natural consequence of his own acts; where one discharges a loaded gun at another, the instruction that it is not a presumption of law that he intends to kill, but that the jury are to judge of the intent, is an instruction sufficiently favorable to the accused.

An assault with intent to kill cannot be justified on the grounds of its necessity in defense of property.

ON EXCEPTIONS.

This was an indictment charging the defendant in the first count with an assault upon one John Flood, with a dangerous weapon, with intent to kill and murder; in the second count, an assault with intent to kill, and in the third count an aggravated assault.

At the trial, the defendant's counsel seasonably requested the presiding judge to give the following instructions to the jury, to wit:

"I. That it is incumbent upon the government, in order to sustain the charge under the first and second counts in the indictment, to prove beyond a reasonable doubt, that the specific intent there [charged actually and in fact existed in the mind of the defendant, at the time he committed the act; that it is incumbent upon the government, if it would establish an intent to kill, to prove beyond a reasonable doubt, that, at the time he committed the act, the defendant in fact intended and designed to take life.

"II. It is not sufficient to establish the intent charged that the act might have been manslaughter or murder, in case death had ensued from it; and no legal presumption arises that the defendant actually and in fact intended to kill or murder, from the fact that it might have been manslaughter or murder, in case death had ensued.

"III. The principle of law that every person is presumed to contemplate the ordinary and natural consequences of his own act, is applicable to cases where death actually ensues; if death does not ensue, then there is no presumption of law arising from the act alone that death was intended; and if no consequences at all follow the act, there is no presumption of law that any consequences at all were intended or contemplated.

"IV. That, if the defendant in fact intended to kill Mr. Noyes, no presumption arises from that fact that he intended to kill John Flood.

"V. From the fact that the defendant inflicted a wound with a shot-gun upon the lower part of the leg of John Flood, no legal presumption arises that he intended to wound John Flood in a vital part.

"VI. From the fact that defendant pointed and discharged a shot-gun at the legs of John Flood, no legal presumption arises

that he actually intended any other consequences than those which in fact resulted from his act.

" VII. Whether, under the circumstances and exigencies of this case, the defendant was justified in discharging a shot-gun at the legs of John Flood, upon the ground that said Flood and the body of men with him were in the act of taking possession of this close by force and violence, and for the purpose of expelling said body of men from said close, is a question of fact for the jury.

" There is no rule of law which absolutely and under all circumstances prohibits the use of firearms in expelling from a close a body of men in the act of taking possession thereof by force and arms, amounting to more than ordinary trespass."

The presiding judge declined to give the foregoing instructions, otherwise than as the same appear in the charge as given.

To this refusal of the presiding judge to give the said instructions as requested; to that part of the charge, as given to the jury, relating to the intent to kill and the intent to kill and murder, and that part authorizing the jury to find the defendant guilty of an intent to kill Flood, if he discharged the gun with intent to kill Noyes and the charge took effect upon Flood; and to that part of said charge relating to the legal justification which defendant had for the act which he committed, and the right to use fire-arms for the purpose of expelling Flood and those with him from the close in question, under the circumstances disclosed by the evidence in this case, the defendant excepted.

The presiding judge, among other things, instructed the jury as follows :

" It is maintained by counsel that, if he had an intent to kill Mr. Noyes, and discharged the gun, and the charge took effect upon Mr. Flood, that the intent to kill Mr. Noyes is not sufficient to constitute the crime charged against the prisoner of intent to kill Mr. Flood.   Upon this point in the case I instruct you that, if the prisoner in discharging the gun intended to kill Mr. Noyes or any other person, any one of the persons assembled there on that occasion, and the charge which he fired from the gun took effect upon Mr. Flood, that is sufficent to constitute the offense with which he is charged.   The intent to kill characterizes the act,

goes with it; and, if the blow reaches any person, it carries with it the criminal intent to kill and murder; and, if it takes effect upon a person other than the one intended, the crime is made out precisely the same as though the intention had been to kill and murder the person hit, precisely as if death had ensued from the wound inflicted. Though the intention of the party was not to kill the person hit, still, if his intention was to kill any person by a murderous assault, and the blow takes effect upon a person other than the one intended, it is sufficient to constitute the crime of murder if death ensues, and it is sufficient to constitute the crime charged in the indictment if death does not ensue."

*E. F. Webb*, county attorney, for the state.

*E. F. Pillsbury, R. Foster & W. P. Whitehouse*, for the defendant, contended, *inter alia*, that the rule given by the court seems to be, that the intent with which one party commits a criminal act towards another characterizes the act, goes with it, and is transferred by presumption of law to another party accidentally injured by the act, and constitutes the same offense in degree as intended towards the party sought to be injured. This rule holds good only where the same degree of injury sought to be inflicted upon the one person is actually inflicted upon the other. When the injury to the second party differs in degree from that intended towards the first, the presumption of law as to intent is governed by the extent of injury so received rather than by the actual intention towards the other.

Suppose Flood had been killed, and Gilman indicted for murder, and the evidence had shown conclusively that he had fired at Noyes with no other intention than to wound him in the foot, would that intent have gone with the act then and saved him from the crime of murder? Nothing is better settled than that the law would presume in such a case that the party intended what he actually accomplished, notwithstanding there was in fact no intention to kill anybody.

Is not the reverse true that, if A assault B with intent to kill him, but accidentally wounds C, he is to be held responsible, as to C, for what he actually did to him, rather than what he actually

intended towards B? Is the grade of offense in such cases to be determined by the result of the incidental injury, or by the original intent, according as the one or the other may secure conviction of the higher grade?

Take the case given by Bishop, 256, as an illustration: " If one shoots into another's poultry, with intent to steal it, and undesignedly sets the house on fire, he is guilty of arson."

Reverse it, and suppose he discharges his gun into the house with the intent to set it on fire, but, instead of producing the result intended, the shot passes through the house and kills the poultry; would the killing of the poultry be punishable as an attempt to commit arson?

The general rule appears to be that the wrong intended but not done, and the wrong done but not intended, coalesce, and together constitute the same offense, not always in the same degree, as if he had intended the thing unintentionally done. 1 Bish. Crim. Law, c. 9, § 254.

In a note in the same section, a quotation from Eden Penal Laws, the following rule is given:

" The case should be considered in law as if the intent had been to do the thing which in fact was done." *Rex.* v. *Holt*, 7 Car. & Payne, 518. 32 E. C. L. 609.

If Gilman aimed at Noyes with intent to kill him, but accidentally and without intent, in fact, hit Flood in the leg, and is held liable by the law on the presumption that he intended the necessary, natural and probable consequences of the act, a conviction of intent to murder involves the idea that wounding Flood in the leg was not a natural and probable consequence, but that hitting him in a vital part would have been. If that were so in fact, if the wound received was not a natural or probable consequence of the act, he could not be held at all, for the law does not raise the presumption as to unnatural and improbable consequences. There were no other consequences than the wound in the leg, and if that was an unnatural and improbable result from the act, he should be acquitted. If it was the natural and probable consequence, how can he be held for any other?

Suppose Noyes had been wounded in the leg instead of Flood,

and Gilman indicted for an assault with intent to murder him. The wound in the leg would raise no legal presumption of intent to hit him in a vital part, but the intent would have to be specifically proved. *State* v. *Neal*, 37 Maine, 468, and authorities there cited.

The case should be considered in law as if the intent had been to do the thing which in fact was done. *Rex.* v. *Holt*, 7 Car. & Payne, 518.   32 E. C. L. 609.   1 Bish. Crim. Law, c. 9, § 254.

If this verdict stands, it will be no bar to an indictment charging an assault upon Noyes, with intent to murder, based on the same act.   He may yet be thus indicted and convicted, and two offenses of the same grade be thus carved out of the same act.

As to defense of property, etc.   1 Bish. §§ 860, 861, 862.

APPLETON, C. J.   This is an indictment charging the defendant, in the first count, with an assault upon one John Flood, with a dangerous weapon, with intent to kill and murder; in the second count with an assault to kill, and in the third count with an aggravated assault.

The assault in question was made by deliberately discharging a loaded gun into a crowd, by which Flood was wounded.

I.   The counsel for the defendant requested the following instruction to be given : " That it is incumbent upon the government, in order to sustain the charge under the first and second counts in the indictment, to prove beyond a reasonable doubt that the specific intent there charged actually and in fact existed in the mind of the defendant at the time he committed the act; that it is incumbent upon the government, if it would establish an intent to kill, to prove beyond a reasonable doubt that, at the time he committed the act, the defendant in fact intended and designed to take life."

The court instructed the jury that it was incumbent upon the state, before it could ask a conviction, to prove the guilt of the accused beyond a reasonable doubt.

The court further, on this branch of the case, instructed the jury as follows: " Had he the intent to kill and murder in making the assault ?   This is the great element in the first and second counts.   Because, as to both of these counts, if there was no

intent to kill, then the crime charged on the prisoner in those counts is not made out. It is incumbent upon the state to prove that the prisoner in fact intended to kill John Flood, under the rule that I shall give you."

This instruction includes the " specific intent " as in fact existing in the mind of the defendant, and embraces all the elements of the request.

II. The defendant's counsel requested the presiding justice to instruct the jury that, if the defendant in fact intended to kill Noyes, no presumption arises from that fact that he intended to kill John Flood.

Instead of such instruction, the following, which constitutes the basis of the defendant's complaint, was given :

" It is maintained by counsel that, if he (the defendant) had an intent to kill Mr. Noyes, and discharged the gun, and the gun took effect upon Mr. Flood, that the intent to kill Mr. Noyes is not sufficient to constitute the crime charged against the prisoner, of intent to kill Mr. Flood. Upon this point in the case I instruct you that, if the prisoner in discharging the gun intended to kill Mr. Noyes, or any other person, any one of those assembled there on that occasion, and the charge which he fired from the gun took effect upon Mr. Flood, that is sufficient to constitute the offense with which he is charged. The intent to kill characterizes the act, goes with it, and, if the blow reaches any person, it carries with it the criminal intent to kill and murder ; and if it takes effect upon a person other than the one intended, the crime is made out precisely the same as though the intention had been to kill and murder the person hit, precisely as if death had ensued from the wound inflicted. Though the intention of the party was not to kill the person hit, still, if his intention was to kill any person by a murderous assault, and the blow takes effect upon a person other than the one intended, it is sufficient to constitute the crime of murder, if death ensues, and it is sufficient to constitute the crime charged in the indictment if death does not ensue."

" The intent charged in this indictment is an intent to murder, and to establish that essential element in the case, it is necessary

that the state proves to your full satisfaction that the prisoner, in making the assault charged upon him, intended to kill John Flood—intended to murder him ; and that embraces the element of malice aforethought."

Here is the case of a man firing a loaded gun deliberately into a crowd. The ruling is that, if intending to " kill Mr. Noyes or any other person, any of the persons assembled there," and the shot took effect upon Flood, the offense as charged would be established. " Where a blow aimed at one person lighteth upon another, and killeth him, it is murder. Thus, A having malice against B, strikes at and misses him, but kills C ; this is murder in A ; and if it had been without malice, and under such circumstances that if B had died it would have been but manslaughter, the killing of C also would have been but manslaughter." Whar. Am. Crim. Law (4 ed.), § 965. "If a man, designing to kill another, kill by mistake a third, the killing of such third person is murder." *Id.* § 997. If intending to murder A, and supposing B to be A, a person shoots at and wounds B, he may be convicted of wounding B with intent to murder him. A question arose as to the propriety of the conviction under such circumstances.. "This conviction is good," remarks Jervis, C. J. " There is no doubt,". says Parks, B., " but the prisoner intended to hit Taylor, but he mistook the particular person." *Regina* v. *Smith*, 33 E. L. & Eq. 567. In *State* v. *Butman*, 42 N. H. 490, Bell, C. J., in delivering the opinion of the court, says : " If the evidence shows an intent to kill, under such circumstances as to constitute a murder if death had followed, the party may be convicted of an assault with intent to murder." In *Walker* v. *State*, 8 Ind. 290, the judge charged the jury that, " if the defendant fired into the crowd in question, of which A, the prosecuting witness, was one, with the deliberate intention, either formed at the time or previously, of killing and murdering some one of the crowd, and that A received a portion of the shot and contents of the gun, and was wounded thereby, it will be sufficient to establish the assault and battery with the intent charged." This instruction was held to be sound law.

Had death ensued in this case, there can be no question that

the prisoner would have been guilty of murder, whether he killed Noyes, whom he intended to kill, or Flood, whom he did not intend to kill, but whom he did kill.

III. The court were requested to give the following instruction: "The principle of law that every person is presumed to contemplate the ordinary and natural consequences of his own acts, is applicable to cases where death actually ensues; if death does not ensue, then there is no presumption of law, arising from the act alone, that death was intended; and if no consequences at all follow the act, there is no presumption of law that any consequences at all were intended."

Upon the question of intent, the instruction was that "a sane man must be presumed to contemplate and intend the necessary, natural and probable consequences of his own acts, and if one voluntarily or wilfully does an act which has a direct tendency to destroy another's life, the natural and necessary conclusion from the act is that he intended to destroy such person's life. Upon this branch of the law, I do not say to you that there is a presumption of law when one discharges a loaded gun at another that he intended to kill. But the rule is that he who discharges a gun must be presumed to intend the natural and ordinary consequences of the act. You can only get at his motives by his act."

The intent precedes and modifies the act. The intent, if criminal, none the less exists, though the act intended fails, by mischance, of its accomplishment. It is the intent which determines the criminality of the act. If A intends to murder B, but the shot slightly wounds, the criminal intent none the less exists, and the assault with the intent to murder is established. So, if the shot intended to murder B hits C, the same result follows. If, when death does not ensue, the presumption is declared to be that death was not intended because death did not ensue, no one could be convicted of an assault with intent to kill. Because the shot does not take effect, though fired with ever so deadly an intent, it does not follow that the natural and ordinary consequences of the act were not intended. The presumption arises from the act and the intention of the act, not from what was accomplished or what failed of accomplishment.

IV. The assault in question was made for the purpose of expelling Noyes and others from the land claimed by the defendant's mother, Noyes claiming title thereto.

The court instructed the jury that it was for them to determine whether the weapon used was a deadly weapon, and, if it was, that the prisoner had no right to use it for the purpose of expelling Flood from his mother's land, if he was on her land.

The law was correctly stated. It was left to the jury to say whether the weapon was a deadly one. The law is well settled that " an assault with intent to kill cannot be justified on the ground that it was necessary for the defense of property. The law, in this respect, must be the same as in homicide. If there is an aggression—a going out of the house for the purpose of attack —self defense ceases." Whar. Am. Crim. Law, § 1284. An assault with intent to kill cannot be justified on the ground that it was necessary for the protection of property. Russell on Crimes, 663.

V. The third, fourth and fifth requests do not seem to have been much relied upon. They are sufficiently answered by the remarks of the judge that he did not say there was a presumption of law that where one man discharges a loaded gun at another, that he intended to kill. The inference from the act is for the jury. The instruction is, " that the man who discharges the gun must be presumed to intend the natural and ordinary consequences of his act." What those may be, and what may be the intent as shown from the act, was what the jury were to determine, and what was properly submitted for their determination.

*Exceptions overruled.*
*Judgment on the*
*verdict.*

WALTON, BARROWS, PETERS and LIBBEY, JJ., concurred.

VIRGIN, J., did not concur.