### STATE *v.* LANG.

Murder and manslaughter may be committed without an intent to kill.
Under Gen. Laws, *c.* 282, *s.* 19, whether there may be an assault with intent to commit manslaughter without an intent to kill, *query.*

There may be accessories before the fact in manslaughter, and in an assault, with intent to kill.

Upon an indictment for being accessory before the fact to an assault with intent to kill, the accused may be convicted as an accessory in an assault.

INDICTMENT, alleging that Merchant made an assault upon Brackett with a club, with intent to kill and slay, and charging the defendant as an accessory before the fact. Motion to quash.

*J. A. Edgerly* and *Worcester & Gafney*, for the defendant.

*F. B. Osgood*, solicitor, for the state.

DOE, C. J. "In former times, when in felony prisoners were compelled to appear without counsel and the judge was in a measure counsel for them, and when the distinction between the functions of judge and jury was not well defined, and judges undertook to assist jurors as to the facts more than they do now, many things were laid down from the bench and transferred to our law books, of which no one can say whether they were meant to be opinions on the law or on particular facts in evidence. And, particularly in homicide, it was customary for the jury to find the special facts, and submit them to the court to determine whether the grade of the crime was murder, or manslaughter. But the form of the finding was largely such as compelled the judges to draw inferences of fact from facts found: these inferences have been transmitted to us in the books as though they were inferences of law. . . 'The judges are to determine what is malice, or what is a reasonable time to cool; and they must do it upon the circumstances of the case.' . . . An actual intent to take life is not a necessary ingredient in murder, any more than it is in manslaughter. . . . The law, in many departments, has established rules to determine the mental condition; and as applied in some circumstances, has given them an arbitrary force; so that sometimes a man who intentionally does a thing is estopped to deny the intent legally attached to the doing. . . . When a man means to do certain things, which he does, and the death of another follows, he is adjudged guilty of murder, or manslaughter, whatever may be his real motive." 2 Bish. Cr. L., ss. 673, 673 *a*, 676, 679. The destruction of life, in perpetrating or attempting to perpetrate arson, rape, robbery, or burglary without an intent to kill, may be murder in the first degree. G. L., c. 282, s. 1; 4 Bl. Com. 200, 201.

In passing counterfeit money, using forged papers, making an assault, inciting another to make it, and in other acts, one may be responsible, civilly and criminally, for the natural and probable consequences of what he does. *Reg.* v. *Hill*, 8 C. & P. 274; 4 Bl. Com. 197, 200; *Towle* v. *Blake*, 48 N. H. 92; *Noyes* v. *Blodgett*,

58 N. H. 502; *Crawford* v. *Parsons*, 63 N. H. 438, 444; *Jackson*
v. *Wagner*, 127 Pa. St. 184; *State* v. *Gilman*, 69 Me. 163; *Sharp*
v. *State*, 51 Ark. 147; *Reg.* v. *Pitts*, 1 Car. & M. 284; *Queen*
v. *Martin*, L. R. 8 Q. B. D. 54; *Reg.* v. *Halliday*, 51 L. T. Rep.
N. S. 701; *Adams* v. *People*, 109 Ill. 444. In *Reg.* v. *Ann Wal-
ters*, 1 Car. & M. 164, the defendant's crime was held to be
manslaughter, if she had no homicidal purpose and had reasonable
ground for expecting that what she did would not cause death.
The rule that one may be justly taken to have intended the natu-
ral consequences of his acts is applied when killing with a deadly
or dangerous weapon, but without an actual design to destroy life,
is made murder, or manslaughter, by common law or statute.    A
weapon is said to be dangerous if it is likely to produce death or
great bodily harm.    " In many cases it is practicable for the court
to declare that a particular weapon was, or was not, a dangerous
weapon, within the meaning of the law."    *U. S.* v. *Small*, 2 Curtis
C. C. 241, 243; *Blige* v. *State*, 20 Fla. 742 ; *State* v. *Godfrey*, 17
Oregon 300.    The ruling in *Rowly's Case*, that the offence was
manslaughter, is supposed by *Foster* (pp. 294, 295) to have been
made on the ground that the stroke was with a small cudgel not
likely to kill.

A man sitting drinking in an alehouse, provoked by a woman's
offensive language, took up a broomstick, and at a distance threw
it at her.    It hit her upon the head and killed her.    On these facts,
found in a special verdict, the question was whether the crime was
murder, or manslaughter.    Two questions were propounded to all
the judges at Serjeant's Inn,—1. Whether the woman's words were
such a provocation as would extenuate the offence into manslaugh-
ter.    2. Admitting they would not in case there had been a strik-
ing with such an instrument as necessarily would have caused
death, as stabbing with a sword, or pistolling, yet whether this
striking, that was so improbable to cause death, will not alter the
case.    The judges were not unanimous; and it was advised the
king should be moved to grant a pardon, which was accordingly
done.    1 Hale P. C. 456.    " The doubt there must have been upon
the ground that the instrument was not such as could probably, at
the given distance, have occasioned death or great bodily harm."
1 East P. C., c. 5, s. 22, p. 236.

On an indictment of Sarah Hazel for murder, there was a special
verdict.    The prisoner having employed her daughter-in-law, who
was ten years old, to reel yarn, and finding some of the skeins
knotted, threw at the child a four-legged stool, which struck her
on the right temple and killed her.    The jury also found that the
stool was of sufficient size and weight to give a mortal blow, but
that the prisoner did not intend to kill the deceased.    " Whether
the prisoner be guilty of murder, or manslaughter, or not guilty,
the jury are ignorant, and therefore pray, etc."    The verdict was
removed into the king's bench, and argued.    Lord *Mansfield* said,—

" It is necessary that the criminal law should be certain. . . . Murder is where a man of sound sense unlawfully killeth another of malice aforethought, either express or implied. If the malice be express, the facts remain with the jury. If the malice is to arise from implication, it is a matter of law, the entire consideration of which resides with the court; and in the present case the finding that there was no intent to kill does not in any degree vary the question." The case stood over till the next term for consultation. At the next term it was. " for the difficulty of it, referred to the consideration of all the judges. But the judges never communicated any opinion. . . . The prisoner . . . received the king's pardon." *King* v. *Hazel*, 1 Leach (4th ed.) 368, 369, 383. " The doubt appears to have been principally upon the question whether the instrument was such as would probably, at the given distance, have occasioned death or great bodily harm." 1 Russell Crimes 519.

In *Com.* v. *Drew*, 4 Mass. 391, tried before *Parsons, Sewall,* and *Thatcher,* the defendant had killed Parker by a blow on the head with a bludgeon which had formerly been used as a handle of a pitchfork. It was of hard wood, four or five feet long, and about two inches in diameter. *Parsons* charged the jury: " If the act of killing was in itself attended with probable dangerous consequences to the deceased, and was committed deliberately, the malice will be presumed unless some sufficient excuse or provocation should be shown; for the law infers that the natural and probable effects of any act, deliberately done, were intended. . . It was necessary for the jury . . . to determine whether the bludgeon used by the prisoner in killing the deceased, was or was not a deadly weapon, which would necessarily kill or do great bodily harm. This was a question of fact for the jury exclusively to decide. If the jury were satisfied that the weapon used was not likely to kill or to do great bodily harm, he was of opinion that either of the provocations was sufficient to free the prisoner from the guilt of murder. For by using a weapon which would not probably do great injury to the deceased, it was a reasonable inference that the prisoner did not intend to kill the deceased, but accidentally killed him, against his intention, and the presumption of malice would be sufficiently rebutted; and without malice, the killing could not be murder. But if the jury were satisfied that the instrument was a deadly weapon, which would probably kill the deceased or do him great bodily injury, these grounds of excuse or provocation would deserve a different consideration. The provocation arising from the trespass committed by the deceased in breaking open the shop door for the purpose of unlawfully entering, was not a provocation sufficient to reduce the killing below the crime of murder; because the trespass was not a sufficient excuse for such a barbarous act. . . . For it is a rule of law that where the trespass is barely against the property of another, not

his dwelling-house, it is not a provocation sufficient to warrant the owner in using a deadly weapon; and if he do, and with it kill the trespasser, this will be murder, because it is an act of violence beyond the degree of the provocation; but if the beating be with an instrument and in a manner not likely to kill, and the trespasser should, notwithstanding, happen to be killed, it will be no more than manslaughter. . . If the facts were as he had stated them, of which the jury were the judges, the killing of the deceased by the prisoner, if the instrument was a deadly weapon, amounted to the crime of murder."

In an appeal of murder against Bibithe as principal, and David as accessory before, the principal was found guilty of manslaughter, and it was resolved that "David was discharged, because he could not be accessory before the fact in case of manslaughter, for manslaughter ought to ensue upon a sudden debate or affray, for if it is premeditated it is murder." 4 Rep. 43. "In manslaughter there can be no accessaries before the fact, for it is presumed to be sudden, for if it were with advice, command, or deliberation, it is murder and not manslaughter, and the like of *se defendendo*. And therefore in an indictment of manslaughter only, if others be indicted as accessaries before the fact, the indictment is void against them." 1 Hale P. C. 437. As manslaughter "is supposed to have been committed without malice, so also it must have been without premeditation; and therefore there can be no accessories before the fact." 3 Gr. Ev., s. 119. This error may have originated in the broad and general terms used in a report of a case of sudden quarrel in which there was no accessary before the fact. In many cases of manslaughter at common law there might be accessories before the fact. In *Reg.* v. *Ann Walters*, 1 Car. & M. 164, the defendant left her infant at the roadside, where it died of cold and exhaustion. The jury were instructed that the crime was manslaughter if there was so much travel on the road that she had reasonable ground for believing that the child would be found and saved. 2 Bish. Cr. L., ss. 686, 689. If she had hired some one to do what she did, she might have been accessory before the fact to manslaughter. "If one should order a servant to do a thing endangering life, yet not so directly as to make a death from the doing murder, it might be manslaughter. Then why should not the master be an accessory before the fact in the homicide?" 1 Bish. Cr. L., s. 678.

An assault may be made with intent to commit murder in the second degree. *State* v. *Williams*, 23 N. H. 321. In *State* v. *Calligan*, 17 N. H. 253, on an indictment for assault with intent to kill and murder, the jury were instructed that if the defendant intended to kill under such circumstances that in case of death the offence would have been manslaughter, he could be found guilty of an assault with that intent. The verdict was guilty of an assault with intent to commit manslaughter, and judgment was rendered

on the verdict. In *State* v. *Butman*, 42 N. H. 490, on an indictment for an assault upon Durgin with intent to kill and murder, the jury were instructed that it would be sufficient if the crime would have been manslaughter in case Durgin had been killed, and judgment was rendered on a general verdict of guilty. "If any person shall make an assault upon another with intent to commit any crime described in this chapter, the punishment whereof may be death or imprisonment for more than one year, or shall attempt to commit any such crime by any means not constituting an assault, he shall be imprisoned not exceeding ten years." G. L., *c.* 282, *s.* 19. This section is not modified by *ss.* 4 and 5 of *c.* 284. Two degrees of murder and two degrees of manslaughter are described in *c.* 282, and the punishment of the lower degree of manslaughter may be imprisonment for more than one year. And as the penalty prescribed by *s.* 19 may be imprisonment for ten years when the assault is with intent to commit either of the four crimes, it is not necessary on an indictment for assault with intent to commit murder or manslaughter, that the degree of intended homicide should be stated in the verdict. A statement of the degree, as in *State* v. *Calligan* and *State* v. *Williams*, is harmless, and a general verdict of guilty, as in *State* v. *Butman*, is sufficient.

"If any person shall aid in, counsel, hire, or procure the commission of any offence, or shall be accessory thereto before or after the fact, he shall be punished in the same manner as the principal offender." G. L., *c.* 284, *ss.* 1, 6. The charge is, that Merchant assaulted Brackett with intent to kill and slay, and that Lang was an accessory before the fact. Whether the assault was with intent to commit murder, or with intent to commit manslaughter, within the meaning of the statute, might depend upon the question whether it would have been murder or manslaughter if Brackett had died of his injuries. *State* v. *Calligan*, 17 N. H. 253; *State* v. *Butman*, 42 N. H. 490; *State* v. *Neal*, 37 Me. 468; *State* v. *Anderson*, 2 Over. 6; *People* v. *Vinegar*, 2 Park. Cr. Cas. 24; *Dunaway* v. *People*, 110 Ill. 333; *King* v. *Mitton*, 1 East P. C. 411; *Reg.* v. *Jones*, 9 C. & P. 258; 1 Bish. Cr. L., *s.* 736; Bish. Stat. Cr., *ss.* 503, 508; Whar. Cr. L., *s.* 1279. Merchant could make an assault upon Brackett with such intent and under such circumstances that it would be manslaughter if it caused Brackett's death. The assault might be with intent to commit manslaughter. And the assault which Merchant could make with that intent, Lang, without being present, aiding and abetting, could counsel him to make. By selecting and furnishing the instrument to be used, directing what injuries should be inflicted, and determining the character and purpose of the assault and under what circumstances it should be made, he would be as guilty as if he were present. In a civil suit, he would be liable as principal for the act of his agent. In a criminal suit, his liability is not affected by calling his agent the principal.

"An assault upon another with intent to commit any crime described in this chapter" (and punishable by death or imprisonment for more than one year) includes an assault with intent to commit manslaughter. As the language of the statute is not "an assault with intent to kill," but (so far as it is applicable to this case) is equivalent to "an assault with intent to commit manslaughter," and as manslaughter, as well as murder, may be committed without an intent to kill, the question might arise whether the legislature meant to require an intent to kill in an assault with intent to commit murder or manslaughter (1 Bish. Cr. L., *ss.* 735, 736), and whether in pleading there can be a good averment of an intent to commit manslaughter without an intent to kill. "Manslaughter without a design to effect death . . . shall be of the first degree when perpetrated by a person engaged in the commission of any offence, or when committed by two or more persons, or by a person bearing any deadly weapon, either open or concealed, or when perpetrated in a cruel or unusual manner, or by means of any deadly or dangerous instrument." G. L., *c.* 282, *s.* 7. Whether the provision of the same chapter for the punishment of an assault with intent to commit manslaughter requires an intent to destroy life, is a question not raised by the defendant's motion. However the statute is construed on this point, and whatever may have been the intent of any other accessory or of Merchant, this defendant may have been an accessory in an assault, and may be convicted as such. *State* v. *Webster*, 39 N. H. 96, 98; *State* v. *Butman*, 42 N. H. 490, 493; *State* v. *Gorham*, 55 N. H. 152; *State* v. *Stone*, 65 N. H. 124. No ground is suggested on which the indictment can be quashed.

*Motion denied.*

SMITH, J., did not sit: the others concurred.