DANIEL PETERSON, PLAINTIFF IN ERROR, VS. THE
    STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Where an indictment charges an assault with a named weapon,
   without designating the manner of its use, it is the proper
   function of evidence to supply the particulars by pointing out
   the specific manner in which the weapon was used to accom-
   plish the alleged assault.
2. Where an indictment charges that an assault was committed
   with a pistol, but does not state the manner in which it was
   used, nor that it was loaded, nor that defendant discharged or
   attempted to discharge it, evidence tending to show that the
   pistol was loaded and that the assault was committed by dis-
   charging it at the person assaulted, is properly admissible.
3. Evidence examined and found sufficient to support the verdict.

Writ of error to the Circuit Court for Franklin coun-
ty.

The facts in the case are stated in the opinion of the
court.

W. B. Sheppard and Geo. P. Raney, for Plaintiff in
Error.

The Attorney General, for Defendant in Error.

CARTER, J.:

In October, 1898, the plaintiff in error was indicted,
tried and convicted for an assault with intent to murder.
The indictment charged that the defendant in and upon
one C. W. Marks, with a certain deadly weapon, to-wit:
a pistol, with which he was armed, and in one of his
hands had and held, feloniously and from a premeditated
design to effect the death of Marks, an assault did make
with the intent and premeditated design him the said

Marks, with the pistol so had and held as aforesaid, feloniously and from a premeditated design to effect the death of Marks, him, the said Marks, to kill and murder. The indictment did not state the manner in which the pistol was used, nor that it was loaded, nor that defendant discharged or attempted to discharge it.

From the State's evidence it appears that on September 22, 1898, Marks was master of the steamer Owens, a vessel plying the Apalachicola river, and bound from Apalachicola to Chattahoochee. The vessel left Apalachicola about 6:30 p. m., and arrived at Brickyard landing about 10 o'clock, where she stopped to put off passengers and freight. Defendant was engaged in logging, and on this occasion he with other raftsmen were passengers on the steamer, destined for Brickyard landing. After the vessel had discharged her freight and passengers at this landing she backed out into the river and started on her way. Marks was standing on the hurricane deck just forward the smokestacks, while two or three other persons were on the same deck but back of the smokestacks. When the vessel had reached a distance of forty or forty-five yards from the landing the defendant from the shore exclaimed that his snubline had not been put off, and that it should not be carried away. He hallooed to the vessel's stevedore to bring off the line and the latter replied that he knew nothing about it. Defendant said the boat should not carry off the line and by God he would make it come back. He then ran twenty-five or thirty feet to the warehouse porch where there was some plunder and came back with a revolver which he fired once in the direction of the boat and twice up the river ahead of the boat, and hallooed to the stevedore to take care of his line and put it off on the return trip. Defendant and others on shore then fired their pistols in the air. About

the time he fired in the direction of the boat one of the witnesses told him not to do that, he would. get into trouble, but defendant replied they were carrying off his line and that they had to bring it back. The boat did not stop, but proceeded on her way, and the next morning one of the officers picked up a flattened ball, size about thirty-eight calibre which had struck the smokestack, leaving a mark where it struck. Judging from the mark on the smokestack, the bullet must have passed within a foot of where Marks was standing at the time of the shooting the night before, and if he had been in range of the ball it would have struck him in or near the stomach. It was not an uncommon thing for raftsmen to fire off their pistols when leaving the boat along this river, and no one on the boat paid any attention to the shooting at the time it occurred, or supposed that the boat had been shot into until next morning when the bullet was found. Marks had never had a difficulty with defendant, in fact had never seen him to know him until some time after the shooting. Defendant expressed no ill-will against Marks or any other person at the time of the shooting, other than can be implied from the language quoted above. Those who witnessed the shooting saw defendant point the pistol in the direction of the boat and discharge it, but they could not say that he pointed in the direction of Marks or any person in particular, nor could they say that defendant knew that Marks was master of the vessel, or that he was standing on the hurricane deck at the time of the shooting. The movements of the boat were, however, subject to the order of Marks as master and it would not have stopped or made the landing again without his order.

The defendant offered no testimony in his behalf. He objected to all evidence relating to his firing the pistol, on the ground that the indictment failed to allege

that it was loaded, or that the manner of its use in making the asault was by shooting, but the court overruled the objection to which an exception was taken. The defendant moved for a new trial, insisting that the verdict was contrary to the law and the charge of the court, and not sustained by the evidence, which was also overruled. There was no motion to quash the indictment, nor in arrest of judgment because of its insufficiency, nor is the charge of the court incorporated into the record. From the judgment imposing sentence the defendant sued out this writ of error, and presents for our review the rulings upon the objections to evidence and motion for a new trial.

I. The defendant argues that as the indictment failed to allege that the pistol was loaded or discharged, or attempted to be discharged, it must as a natural result of such deficiency of allegation be construed to mean that the assault was accomplished in some manner consistent with the possible use of an unloaded weapon of that character, as by striking with it, and that therefore the evidence of its being discharged varied from the allegations of the indictment as thus construed. If the indictment had alleged that the assault was committed with an unloaded pistol, the defendant's argument would have much to commend it, but there is no such allegation in this indictment, and it would be doing great violence to the language used to give it the construction insisted upon. To allege that an assault was made with a pistol, does not imply that it was not loaded, nor that the assault was not committed by shooting. It means of course that the assault was committed with the designated weapon in some manner consistent with the use to which such weapon is capable of being put, but an assault by shooting is certainly neither impossible, unusual, nor beyond the range of the capabilities of

the weapon, where that weapon is alleged to be simply "a pistol." Where the indictment charges an assault with a named weapon, without designating the manner of its use, it is the proper function of evidence to supply the particulars by pointing out the particular manner in which it was used to accomplish the alleged assault. State v. Croft, 15 Texas, 575; Mayfield v. State, 44 Texas, 59; Cross v. State, 55 Wis. 261, 12 N. W. Rep. 425; State v. Sheering, 12 Mont. 539, 31 Pac. Rep. 543; State v. Dent, 3 Gill & J. (Md.) 8; State v. Gainus, 86 N. C. 632; Dunn v. People, 158, Ill. 586, 42 N. E. Rep. 47; State v. Smith, 41 La. Ann. 791, 6 South. Rep. 623; Williams v. State, 47 Ind. 568; Burton v. State, 3 Tex. Cr. App. 408, S. C. 30 Am. Rep. 146; State v. Clayton, 100 Mo. 516, 13 S. W. Rep. 819. As the evidence offered was not inconsistent with the allegations of the indictment, but tended to prove the assault, and the intent with which it was made, in accordance with those allegations, it was properly admitted.

II. Under the third assignment of error the defendant contends that the evidence fails to show an assault on Marks, and also that it fails to show a premeditated design to kill him. The statute under which this indictment was drawn does not require that the assault be accompanied by a battery in order to constitute the offence of assault with intent to commit a felony. It is of no consequence, therefore, that Marks was not struck by the pistol ball, if it be found that he was assaulted; and the evidence clearly proves an assault. The defendant fired in the direction of the boat upon which Marks and other persons were traveling at the time, and the defendant's expressed purpose in firing the shot was to make the boat come back. The boat appears to have been within carrying distance of the weapon, and circumstances were in evidence tending to show

19

that the smokestack was struck by a bullet. The assault was entirely uncalled for; no provocation sufficient to arouse the passions had been given defendant by any one; the act was deliberately and wilfully done, even in the face of warnings from a bystander. The object of the assault was to make the boat "come back," and no one could make it come back but the captain, and a shot intended for that purpose would, therefore, naturally be directed at the captain. While it is not positively proven that defendant knew that the movements of the boat were under control of the captain, or that he knew the captain was standing upon the hurricane deck when the boat landed, the fact that he had been a passenger and had just left the boat, tends to show that he did. The reckless and yet deliberate character of the defendant's unprovoked act, shooting into a passenger steamer, and the avowed purpose for which it was done, to "make it come back" to put off his snubline, together with the finding of the bullet, the range at which it was fired, and the fact that no one but the captain could make the boat "come back," were circumstances for the jury to consider in determining against whom the assault was directed, and with what design, and having found that the assault was upon Marks, the captain, and from a premeditated design to effect his death, we do not feel justified in disturbing their finding which has had the approval of the presiding judge. State v. Myers, 19 Iowa, 517; State v. Merritt, 62 N. C. 134; Commonwealth v. McLaughlin, 12 Cush. 615; Walker v. State, 8 Ind. 290; Callahan v. State, 21 Ohio St. 306; State v. Gilman, 69 Me. 163, S. C. 31 Am. Rep. 257; Smith v. Commonwealth, 100 Pa. St. 324; Dunaway v. People, 110 Ill. 333, S. C. 51 Am. Rep. 686; Regina v. Smith, 33 E. L. & E. 567; Reg v. Fretwell, 9 Cox's

Crim. Cas. 471; People v. Raher, 92 Mich. 165, 52 N. W. Rep. 625.

The judgment is affirmed.