(53 South. 868.)

No. 18,391.

STATE v. THOMAS.

(Nov. 28, 1910. Rehearing Denied Jan. 3, 1911.)

*(Syllabus by Editorial Staff.)*

1. HOMICIDE (§ 89*)—ASSAULT WITH INTENT TO KILL—INTENT TO KILL THIRD PERSON.

A conviction may be had under Rev. St. § 791, as amended by Acts 1890, No. 43, punishing whoever shall shoot, stab, cut, strike, or thrust any person with a dangerous weapon with intent to commit murder, though accused accidentally wounded one person while attempting to shoot another without excuse.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 116; Dec. Dig. § 89.*]

2. CRIMINAL LAW (§ 568*)—INTENT—PROOF.

Where a specific intent is made an element of an offense by statute, such specific intent must be proved, proof of general malice or criminal intent not being sufficient.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1271; Dec. Dig. § 568.*]

3. CRIMINAL LAW (§ 1165*)—HARMLESS ERROR—PROCEEDINGS FOR APPEAL.

Where accused is given the full benefit on appeal of the facts which he desired to have the clerk take down to be used as a basis for a bill of exceptions pursuant to Acts 1896, No. 113, he cannot complain of the trial court's refusal to have the clerk take down such a statement of facts.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3085; Dec. Dig. § 1165.*]

4. CRIMINAL LAW (§ 721½*)—TRIAL—ARGUMENT OF COUNSEL.

The district attorney stated in argument in a homicide case that the testimony of the state's witnesses showed that accused's mother was at the place of the shooting, and begged him

not to shoot, and further stated: "Why did he not have her here, if it not true that she was there? And, gentlemen of the jury, it is a circumstance against him." *Held*, that the part quoted was argument, and therefore not objectionable; the state's witnesses having testified as stated by the district attorney.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1673; Dec. Dig. § 721½.*]

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Robert S. Ellis, Judge.

Spencer Thomas was convicted under an indictment charging him with willfully and with malice aforethought shooting at another with intent to commit murder, and he appeals. Affirmed.

R. C. & S. Reid, for appellant. Walter Guion, Atty. Gen., and W. H. McClendon, Dist. Atty. (R. G. Pleasant, of counsel), for the State.

PROVOSTY, J. The accused quarreled with one Washington in front of the latter's house, walked about 200 yards away, and procured a gun, and returned, and, without excuse, fired at Washington, wounding both him and one Alma Meyers who was on the gallery of the house back of him. The indictment reads that the defendant:

"Willfully, feloniously, and of his malice aforethought did shoot Alma Meyers with a dangerous weapon with intent to commit murder, contrary to the form of the statute," etc.

The statute is section 791, Rev. St., as amended by Act No. 43 of 1890, and reads:

"Whoever shall shoot, stab, cut, strike, or thrust any person with a dangerous weapon with intent to commit murder shall," etc.

The main reliance of defendant is upon three bills covering the difference between his counsel and the judge as to whether there can be a conviction under said statute in a case where the shooting was at another person and only took effect accidently upon the person named in the indictment.

We agree with the learned trial judge that in the instant case the terms of the statute

127 LA.—19

are completely satisfied, and the allegations of the indictment fully proved, if there is the shooting of any person,—no matter of what person,—and the shooting is done with a dangerous weapon and with intent to commit murder; in other words, that there is nothing in the terms of the statute requiring that the person who was shot should have been the person intended in fact to be murdered, or who was shot at.

It will be observed that the indictment does not charge that the intent to murder was directed towards Alma Meyers; and that it did not need so to charge. Whether its so charging would have made any difference, or, in other words, whether its so charging could not have been treated as mere surplusage, is a question that need not be considered. In Regina v. Ryan, 2 Macl. & R. 213, where G. took poison which the prisoner had intended for C., and the indictment charged specifically that the prisoner had intended to poison G., Parke, B., doubted whether the verdict could stand, and directed another indictment to be brought charging generally that the prisoner did the act "with intent to commit murder"; without specifying against whom the intent was directed. He said that he doubted the correctness of a previous decision (Rex v. Lewis, 6 C. & P. 161), where, upon similar facts, the verdict had been maintained, although the statute then required that the intent should have been to murder "such person"—i. e., the person named in the indictment. He added that the language of the statute had been altered in order to provide for just such a case as the one in question; so that it was now sufficient to allege generally that the prisoner did the act "with intent to commit murder," without naming the person against whom the intent was directed.

Under the caption "Assault taking effect on one not meant," Bishop, New Crim. L. vol. 2, § 741, par. 4, has the following:

"Should the assault terminate in a battery of a person not meant, Is the offense of assault with intent to kill or murder committed? In legal reason, and in the absence of special terms in the statute, it is; because in such a case both the statutory act and the statutory intent have transpired—the legislative words are covered, and the wrong done is completely within their spirit. The indictment might·even charge that the assault was made on one named, mistaken by the accused for another one named with intent to take the latter's life; for here the thing done would be apparently adapted to accomplish the death meant, bringing the case within the general rule of the law of attempt."

From Bacon's Maxims, rule 15, we take the following:

"In criminal causes, general malice, or intent, is enough, provided it is combined with a fact of as high a degree. * * * All crimes have their conception in a corrupt intent, and have their consummation and issuing in some particular ·fact, which, though it be not the fact at which the intention of the malefactor leveled, yet the law giveth him no advantage of the error, if another particular ensue of as high a nature." Bacon's Maxims, rule 15. See 8 A. & E. E. 288.

In support of his contention, the learned counsel for defendant cites the cases of State v. Evans, 39 La. Ann. 912, 3 South. 63; Lacefield v. State, 34 Ark. 275, 36 Am. Rep. 8; State v. Mulhall, 199 Mo. 202, 97 S. W. 583, 7 L. R. A. (N. S.) 630.

The doctrine of the Evans Case, here cited, is simply that where a specific intent is required by the statute, and a specific intent is, accordingly, charged in the indictment, this specific intent must be proved. In other words, that in such a case a general intent to commit a crime will not suffice, but that the specific intent must be proved.

There can be no doubt that where a specific intent is made by the statute an element of the crime, this specific intent must be proved, and that in such a case proof of general malice or criminal intent will not suffice. Thus, in assault with intent to kill, proof of an intent to rape will not suffice; and, vice versa, in assault with intent to rape, proof of intent to kill will not answer. But in a case like the present the specific intent required by the statute is proved; the shooting is done with intent to kill. True, the intent was to kill a different person; but, we repeat, the statute does not require that the intent must be to kill the person actually shot; it merely requires that there must be an intent to kill.

In the other case cited by defendant, supra —that of Lacefield v. State, 34 Ark. 275, 36 Am. Rep. 8—the prisoner shot at McClure and hit one Heartstings. He was charged with having made an assault upon Heartstings "with intent him, the said Heartstings, to kill and murder." The court held that the specific intent to kill Heartstings had to be proved. In support of that view the court cited Rex v. Holt, 34 Eng. C. L. 522, supra; 2 Starkie on Evidence, 572; State v. Neal, 37 Me. 468; State v. Jefferson, 3 Har. (Del.) 571; Ogletree v. State, 28 Ala. 693.

In Rex v. Holt, as already pointed out, supra, the statute required that the intent should have been to murder "such person"; i. e., the person named in the indictment. This distinguishes that case from ours, and, possibly, also from this Lacefield Case, since in this Lacefield Case it might perhaps have been possible to treat the allegation of the intent having been to murder the person named in the indictment as surplusage.

Referring to Starkie on Ev. 572, we find there a note announcing broadly, as in this Lacefield Case, that "Where one aiming at A. misses him and wounds B., he cannot ·be convicted of assault with intent to kill . B." Whether this note is by Starkie is not certain. No decision, or other authority, is cited in support of it.

In Ogletree v. State, 28 Ala. 693, the defendant had threatened to kill one Mitchell, and was about to assault Mitchell with a stick when one Tiller intervened to prevent him from doing so, and defendant turned upon Tiller and struck him with the stick, and the indictment was for assaulting Tiller

with intent to kill.    Proof of the threat made against Mitchell was objected to, on the ground that the threat had been made against a different person.    The trial court admitted the evidence on the principle that the general intent which the defendant entertained at the moment to commit a crime could be proved in support of the alleged specific intent to kill Tiller.    On appeal the ruling was reversed, the court holding that the evidence had to be restricted to the specific intent to kill Tiller.    The case is authority only to the extent stated in the syllabus, that:

"To constitute an assault with intent to murder, it is not sufficient to prove a general felonious intent, or any other than the particular intent alleged in the indictment."

The case is not analogous with ours, or with the Lacefield Case, supra, in that it was not the case of a blow aimed at one person, and falling accidently upon another.

So in State v. Neal, 37 Me. 468, there was not presented a case of injury falling upon a different person from the one intended.    The question there was simply as to the sufficiency of the evidence to show malice aforethought.    The case is authority for no other proposition than that malice aforethought must be proved before a defendant can be convicted with assaulting with intent to murder.    What malice there was in that case was directed against the person injured.

The other, and last, decision cited in the Lacefield Case, namely, State v. Jefferson, 3 Har. (Del.) 571, we are not able to refer to, the report not being in our library.

The case of State v. Mulhall, 199 Mo. 202, 97 S. W. 583, 7 L. R. A. (N. S.) 630, cited by defendant, we do not consider to be analogous with ours in its facts.    The statute in that case read:

"Every person who shall, on purpose and of malice aforethought, shoot at * * * another * * * with intent to kill * * * such person, or in the attempt to," etc., "shall," etc.

The defendant had not "shot at" the person he wounded, but had "shot at" another person.    It will be observed that the statute required as an essential element in the crime that the accused should have "shot at" the person named in the indictment:

"Every person who shall * * * shoot at another * * * with intent to kill such person"

—i. e., the person shot at.    Such being the case, it would seem to be plain that he could not be convicted upon facts showing that he "shot at" a different person.

So, in like manner, in Jones v. State, 11 Smedes & M. (Miss.) 315, Morgan v. State, 13 Smedes & M. (Miss.) 242, and Commonwealth v. Morgan, 11 Bush (Ky.) 601, the indictment was for "shooting at," as in this Mulhall Case.

It must be admitted, however, that in these cases, and in many others that could be referred to, the court dealt with the case as if the statute had read like that in the case at bar.    And it must be further admitted that in a large number of cases the courts have announced broadly, that where the statute requires a specific intent, there cannot be a conviction unless the facts show that the intent was directed against the particular person named in the indictment.    But all these cases, except that of Lacefield v. Arkansas, supra, may be distinguished upon their facts as we have done hereinabove with that of State v. Mulhall, etc., supra.    Thus:

In Felker v. State, 54 Ark. 489, 16 S. W. 663, the accused had armed himself with a gun and gone to the ginhouse of the prosecuting witness with the intention of burning it and while there and endeavoring to execute such purpose, had shot the prosecuting witness who was attempting to arrest him.    The indictment was for assault with intent to murder.    The trial judge charged that if the jury found the foregoing facts, they should convict.    The appellate court said of this charge:

"It does not make the defendant's intent to kill the prosecuting witness essential to conviction. If he did not shoot with intent to kill, he was not guilty of the felony charged, although he may have entertained a present design to commit another felony. * * * The specific design to commit another felony cannot supply the intent to kill."

In Wood v. State, 34 Ark. 341, 36 Am. Rep. 13, where the charge was larceny, and the defense was absence of intent, the court said:

"In larceny, there must be a concurrence with the act and intent to do it—and also a felonious intent; and the same author we have quoted says:
"'A bare intentional trespass not being larceny, but the specific intent to steal being necessary, also, if one who is too drunk to entertain this specific intent takes property, relinquishing it before the intent could arise in his mind, there is no larceny.'"

In Simpson v. State, 59 Ala. 1, 31 Am. Rep. 1, the accused set a spring gun for trespassers, and accidently wounded his neighbor, against whom he entertained no enmity. The indictment was for assault with intent to murder. The court said that the doctrine of an intent in law different from the intent in fact, or, in other words, of imputable intent, had no application to the case. That the specific intent to assault the person who was wounded would have to be proved.

This broad statement of the law must be read in connection with the facts of the case, according to which there was no necessity to go further than to hold that whenever a specific intent is required by the statute, as, for instance, to kill or to commit burglary or rape, such intent must be proved; and that malice generally or a general criminal intent will not suffice.

The exact point involved in our case came up before the High Court of Justice, England, Queen's Bench Division, in the case of The Queen v. Latimer, 17 Q. B. D. 359. Lord Chief Justice Coleridge and Judges Bowen, Field, and Manisty together with Master of the Rolls, Lord Esher, rendered separate opinions. Judge Field said:

"This is a very important case of wide application, and I am glad that it has received the authoritative decision of this court."

Judge Manisty said that the case raised "an exceedingly important question." The decision was unanimous. The case was one where the prisoner had struck at one person and wounded another whom he had not intended to strike; and the indictment was under 24 & 25 Vict. c. 100, § 20, providing that "whoever shall unlawfully and maliciously wound or inflict any grievous bodily harm upon any other person," etc. On the side of the prisoner, the case of Rex v. Pembliton, 2 Law Reports, C. C. 119, was invoked as authority. There, a person throwing a stone at some persons in the street had broken a window, and was indicted for "unlawfully and maliciously" causing damage to the window; and Blackburn, J., had said:

"It is impossible to say that the prisoner has maliciously done an act which he did not intend to do."

On the side of the crown, the case of Rex v. Hunt, 1 Moo. C. C. 93, was cited, where the prisoner, stabbing at one man, cut and wounded another, and, on an indictment for feloniously cutting, the court held that "general malice was sufficient under the statute without particular malice towards the person cut." Coleridge, L. C. J., said:

"It is common knowledge that a man who has an unlawful and malicious intent against another, and, in attempting to carry it out, injures a third person, is guilty of what the law deems malice against the person injured, because the offender is doing an unlawful act, and has that which the judges call general malice, and that is enough. * * * The Master of Rolls has pointed out to me that sections 18 and 20 are in substitution for and in correction of the earlier statutes, in which the unlawful act must be done with intent to injure 'such person,' making it necessary that the intent should be against the person injured, whereas in 24 & 25 Vict. c. 100, the words 'such person' are left out, for sec. 18 says 'any person,' and sec. 20 'any other person.' So, but for Regina v. Pembliton, there would not have been the slightest difficulty. Does that case make any difference? I think not, and, on consideration, that it was quite distinguishable, because the indictment in Reg. v. Pembliton

was on the act making unlawful and malicious injury to property a statutory offense punishable in a certain way, and the facts expressly negatived any intention to do injury to property."

In Rex v. Jarvis, 2 Macl. & R. 40, the prisoner shot at Hale and accidently hit Lockeyer, and was indicted for shooting the latter with intent to murder. The conviction was sustained.

In Reg. v. Smith, 33 Eng. L. & Eq. R. 567, where the accused shot at A. supposing it to be B., whom he intended to murder, Baron Parke said:

"The prisoner did not intend to kill the particular person, but he intended to murder the man at whom he shot."

The prosecution was under 7 Wm. IV, and 1 Vict. c. 85, § 3, for shooting at and wounding B., with intent to murder. The conviction was sustained.

So where a person deliberately shot into a crowd intending to kill A. and wounded B., held that he could be convicted of an assault with intent to murder B. Dunaway v. People, 110 Ill. 333, 51 Am. Rep. 686; citing State v. Gilman, 69 Me. 163, 31 Am. Rep. 257.

One who, intending to kill A., assails B. in the dark, may be indicted for assaulting with intent to kill B. McGehee v. State, 62 Miss. 772, 52 Am. Rep. 209.

On an indictment for assaulting with intent to kill, an instruction to the effect that if defendant feloniously shot at A. with the intention of killing him, and, missing him, shot B., he was guilty. State v. Montgomery, 91 Mo. 52, 3 S. W. 379.

In Callahan v. State, 21 Ohio St. 306, the prosecution was under a statute reading "that if any person shall maliciously shoot any other person with intent to kill, every person so offending shall," etc. The court said:

"The question of chief importance presented by the record arises on exceptions by the prisoner's counsel to the ruling of the court, and is based on the assumption that criminal in-

tent, in the sense of the statute, cannot be asserted of a killing, wounding, or maiming in fact, unless the victim of the shot was the real object of the malice which induced it. To us this seems too narrow a construction of the statute."

In People v. Torres, 38 Cal. 141, the defendant was indicted for assault with intent to commit murder. He had assaulted one Mittrovich with a knife, but with an intent to kill one Drascovich. The court said:

"If A., intending to murder B., shoots C., supposing C. to be B., and wounds C., he is guilty of an assault with intent to murder C. Notwithstanding A.'s mistake, C. is the person whom he assaulted, and whom he intended to kill"—citing Reg. v. Smith, supra.

Other cases in point are: Where the prisoner struck at one person with intent to kill and wounded another (Wareham v. State, 25 Ohio St. 601); where the prisoner threw a stone at a person and struck another (State v. Jump, 90 Mo. 171, 2 S. W. 279); where A. mistook B. for some one else and assaulted him (Reg. v. Stofford, 11 Cox, C. C. 643). In the same sense: Mathis v. State, 39 Tex. Cr. R. 549, 47 S. W. 464; State v. Gilman, 69 Me. 163, 31 Am. Rep. 257; Jennings v. U. S., 2 Ind. T. 670, 53 S. W. 456; Territory v. Rowand, 8 Mont. 432, 20 Pac. 688, 21 Pac. 19; Musick v. State, 21 Tex. App. 69, 18 S. W. 95; Walker v. State, 8 Ind. 290.

Archibold's Crim. Pr. & Pl. 271, lays down the rule:

"If a man fire at A. and shoot B., he may be indicted for shooting the pistol or gun against B.; for in fact he did so."

In support of this, the author cites R. v. Jarvis, 2 M. & R. 40, supra; and the annotator cites R. v. Holt, 7 C. & P. 518, supra, and Reg. v. Smith, 33 E. L. & E. 567, supra. Our conclusion is that there was no error in the ruling of the trial court on this point.

Defendant also complains of the refusal of the judge to have the clerk take down, in accordance with Act 113 of 1896, a statement of facts to be used as a basis for one of his

bills of exceptions. The facts in question were a qualification added by the judge to one of the special charges requested by defendant.

It is the right of a defendant to have the judge give his charge in writing, and no part of it verbally. Act No. 113 of 1896 would not seem, therefore, to have been intended to apply to the charge of the judge. But, pretermitting that question, the defendant has had in the foregoing decision the full benefit of the statement of facts which he desired to have taken down; therefore he has no ground to complain.

Defendant also excepted to the following remarks made by the district attorney in his closing address to the jury:

"The testimony of the state's witnesses show that his mother was there and begged him not to shoot. Why did he not have her here, if it not true that she was there? And, gentlemen of the jury, it is a circumstance against him."

It is not denied that the witnesses of the prosecution had testified as here stated. The rest of the remark was by way of argument, and therefore unobjectionable.

Judgment affirmed.