The State v. Payton.

## THE STATE v. PAYTON, *Appellant.*

1. **Criminal Law** : INDICTMENT : MURDER. An indictment charging two persons with murder, which alleges that they, with rifle guns, etc., shot the deceased, giving him one mortal wound, is not inconsistent and is sufficient.

2. —— : —— : ——. Where two persons jointly commit a murder, the one doing the murderous act and the other being present aiding, abetting, and assisting therein, both are principals, and the indictment in such case may either allege the matter according to the fact, or charge them both as principals in the first degree. (Affirming *State v. Anderson*, 89 Mo. 312).

2. —— : LYING IN WAIT : KILLING PERSON NOT INTENDED : MURDER : INSTRUCTION. Where one lies in wait and shoots at another with intent to kill him, but kills a third person, instead, he is guilty of murder in the first degree (R. S., sec. 1232), and in such case an instruction for murder in the second degree should not be given.

4. —— : INSTRUCTION : REASONABLE DOUBT. An instruction which defines a reasonable doubt to mean a real, substantial doubt, while not approved, held not to be reversible error.

The State v. Payton.

5. ———: SEPARATION OF JURY. The temporary separation of two jurors from their fellows, in a trial for murder, they remaining locked in their room while the other ten were taken out in charge of an officer, there being no pretense that they were approached or in a situation to be approached, is no ground for a new trial. (Affirming *State v. Collins*, 86 Mo. 250).

*Appeal from Christian Circuit Court.*—HON. W. F. GEIGER, Judge.

AFFIRMED.

*Harrington, Hammond* and *J. M. Patterson* for appellant.

(1) The record does not show that the indictment was returned by the foreman of the grand jury in the presence of the jury, as required by section 1797 of the Revised Statutes of 1879. (2) The indictment is absurd and inconsistent in this : that it charges that one mortal wound produced the death of the deceased, and that said mortal wound was given by both of the defendants with two different guns. (3) Defendant's motion for a new trial should have been sustained for the reason that the verdict was against the evidence. (4) The state did not prove any deliberation or premeditation on part of defendant, and the court committed a grievous error in giving the fourth instruction asked for the state. Deliberation and premeditation are material facts in murder in the first degree, and must be proved. *State v. Foster*, 61 Mo. 552, and authorities cited; *State v. Mitchell*, 64 Mo. 192; *State v. Long*, 64 Mo. 322. The sixth instruction should not have been given. The word "real," in the definition of reasonable doubt, has been condemned in *State v. Owens*, 79 Mo. 632. (5) As shown by affidavits, the jury was permitted to separate, which is urged as an error and as being contrary to section 1909 of the Revised Statutes of 1879. In case of *State v. Collins*, 81 Mo. 657, the question was considered fully

and declared that such an error must reverse the cause. (6) If the testimony of the state is true, we have a case of murder in the second degree, and the court committed manifest error in not instructing the jury as to murder in the second degree. (7) Instructions numbered one, two, three, four and five, asked by defendant and refused, should have been given.

*B. G. Boone,* Attorney General, for the state.

(1) The record entry of the return of the indictment by the grand jury through their foreman, is in almost the identical language of the statute, and is not objectionable. R. S., sec. 1797. (2) The indictment correctly charges murder in the first degree, and is not subject to objection. 2 Hale's P. C. 173 ; 1 Bish. Crim. Proc. [2 Ed.] sec. 471 ; Whar. on Hom. [2 Ed.] sec. 338 ; 1 Whar. on Crim. Law, sec. 129 ; *State v. Green,* 13 Mo. 382 ; *State v. Dalton,* 27 Mo. 14; *State v. Blan,* 69. Mo. 317. (3) The defendant interposed no objections, at the time, to the admission or exclusion of any evidence, and he cannot now complain. *State v. McDonald,* 85 Mo. 539, and cases cited. (4) Malice, deliberation and premeditation are conditions of the mind which cannot be proved by express or positive evidence, but they may be deduced from all the facts and circumstances attending the killing. *State v. Talbott,* 73 Mo. 347, and cases cited ; *State v. Kotovsky,* 74 Mo. 247 ; *State v. Grant,* 76 Mo. 247. (5) The use of the word "real," in the definition of a reasonable doubt, is not reversible error. The use of the word is a mere irregularity, and could not redound to defendant's injury. It is only where some positive rule of law has been violated, that may possibly prejudice defendant, that will justify a reversal. *State v. Holme,* 54 Mo. 160. The definition of reasonable doubt, as used in the case at bar, has, since the rendition of the opinion in *State v. Owen,* 79 Mo. 632,

been approved by this court.   *State v. Jones*, 86 Mo. 623.
(6) The separation of the jury complained of by defend-
ant is not such a violation of sections 1909 and 1966, Re-
vised Statutes, as to justify a reversal.   It is only such a
separation that the jurors may be tampered with, and
defendant be prejudiced, that will be entertained by this
court.   *State v. Bell*, 70 Mo. 633, and cases cited ; *State
v. Collins*, 86 Mo. 245.   (7) Defendant's first and second
instructions refused did not declare the law, and the
third was clearly erroneous.   It asserts the doctrine that,
if defendant intended to kill L. T. Mathews, the father,
and killed his child, it is not murder.   This has never
been the law.   1 Hale's Pl. Cr. 451 ; 4 Blk. Com. 199 ;
1 Whar. Crim. Law [8 Ed.] sec. 382.   If one or several
effect an illegal purpose, it is to be regarded as causing
the resulting illegal act, as the law infers that every one
intends the necessary consequences of his or their acts.
Desty Crim. Law, secs. 6*a*, 127*b; State v. Underwood*, 57
Mo. 40 ; *State v. Patterson*, 45 Vt. 308 ; *Stokes v. People*,
53 N. Y. 164.   All participating·in such illegal act with
a common intent are equally guilty.   1 Whar. Crim. Law
[8 Ed.] sec. 152 ; *Reg. v. Lee*, 4 Fost. & F. 63 ; *Reg. v.
Caton*, 12 Cox Cr. C. 624.   If a man shoots at another
with intent to kill, and kills a third person, it is murder.
4 Blk. Com. 199 ; *Com. v. Webster*, 59 Mass. 306 ; *State
v. Smith*, 2 Strob. (S. C.) 77 ; *People v. Keefer*, 18 Cal.,
636 ; *State v. Cooper*, 13 N. J. Law, 381 ; *Wareham v.
State*, 25 Ohio St. 601 ; *Angell v. State*, 36 Tex. 542.

   · Black, J.—The defendant, fifteen years of age, and
his brother, William R. Payton, were jointly indicted
for killing Claudie E. Mathews, an infant, on the twelfth
of April, 1885.   After a severance, James S. Payton was
tried and found guilty of murder in the first degree.

   The evidence shows that these two boys lived with
their parents ; L. T. Mathews resided in the same neigh-
borhood, on a farm to which it seems the father of the

Payton boys made some claim.   There is some evidence to the effect that defendants had said they would cultivate the place, and no one else should.   On the twelfth of April, 1885, at about four o'clock in the afternoon, Mathews was moving from the house on the place before referred to.   He was sitting on the right-hand side of the front seat in a wagon filled with household goods.   His wife was to his left, and her sister behind them, holding in her lap the child Claudie.   When about a quarter of a mile from the house, two men fired one shot each from rifle guns, from behind a log not more than fifteen steps from the wagon, and then ran away.   One ball struck Mr. Mathews in the breast and came out under the arm. Another passed through the head-board of a bed-stead standing in the wagon, and thence into and through the head of the child Claudie, killing it.   Mr. Mathews jumped out of the wagon, when he first heard the shots, and says he watched the men who shot until they were two hundred and fifty or three hundred yards away from him.   Says he knew the Payton boys well, and knows they were the persons who shot himself and child.   On the next evening after the shooting the boys were arrested, and it is shown by those who assisted in making the arrest, that they and their father were then armed in an out-house.   One of the parties making the arrest asked James if he did not do the shooting, when James answered : "Wouldn't you do like us, if anybody was trying to kill you?"   The boys and their father then claimed that some one had exploded giant powder on a house in which they had previously resided, and they were afraid of a repetition of the same thing, and for that reason were armed and watching in the out-house.   There is no evidence that Mathews threw giant powder on the house, or that he had in any way interfered with the Paytons.   Defendant offered evidence tending to show an *alibi*, and the state offered contrary evidence in rebuttal.

1.  The objection, that the record does not show that the indictment was returned into court by the foreman of the grand jury, in the presence of the jurors, cannot be sustained.   The record shows that the grand jury came into open court and through the hand of their foreman returned into open court one indictment, etc. The entry is in full compliance with section 1797, Revised Statutes, 1879.

2.  The next objection is, that the indictment is inconsistent, in that it charges that one mortal wound produced the death of the child, and that the wound was given by both defendants with different guns.   The indictment, after alleging an assault, proceeds to state that the defendants, with rifle guns, loaded with powder and leaden balls, "him, the said Claudie E. Mathews, feloniously," etc., "by means of the powder and balls aforesaid, did shoot, penetrate and wound, and thereby then and there give to him, said Claudie E. Mathews, one mortal wound of the width," etc.   There can be no doubt but the defendants were properly included in the same indictment, and both properly charged as principals.   Wharton on Hom. [2 Ed.] sec. 338; secs. 1649, 1811, R. S., 1879.   It was said in *State v. Dalton*, 27 Mo. 14, if two persons are charged as principals, one as the immediate perpetrator of the injury, and the other as aiding and abetting, it is immaterial which of them is charged as having inflicted the wound, inasmuch as the law imputes the injury given by one as the act of the other.   So that an indictment that A gave the blow and B was present and abetting, is sustained by evidence that B gave the blow and A was present and abetting. Now, while the indictment might have been in the form above indicated, it does not follow that the present one is bad.   It was held in *State v. Blan*, 69 Mo. 318, that an indictment for murder in the first degree was not faulty in failing to state separately the individual acts of each

defendant. And in *State v. Dalton, supra*, the indictment was held to be sufficient to support a conviction, though it alleged that both defendants held the same knife, club, or pistol, in the right hand. The indictment may either allege the matter according to the fact, or charge them both as principals in the first degree. *State v. Anderson*, 89 Mo. 312. In the present case it cannot be said which of the defendants fired the particular shot which killed the child, but in the eye of the law, both are equally responsible. Bishop in his Criminal Procedure [3 Ed.] volume 2, section 471, says: "The common method is simply to name them (defendants), and add that they did so and so. Offenses jointly committed being in law several, such an allegation is equivalent to saying that each defendant did the criminal act." The indictment is, therefore, well enough.

3. The next objection is, that the verdict is against the evidence, and in view of this contention, and of the fact that the court refused to instruct upon murder in the second degree, we have before stated the evidence somewhat in detail. It is true that neither Mrs. Mathews nor her sister saw the persons who fired the shots, but it must be remembered that Mrs. Mathews says she stopped the team; that when she looked around and saw the baby killed, she did not notice anything else. Under these circumstances, it was natural and to the credit of both of the women that they were completely absorbed in their attention to the dying child. The evidence of Mr. Mathews is positive as to the identity of the defendant. Under the evidence, it was a deliberate murder, on the part of the defendant, or he had no hand in it at all; it is the province of the jurors to determine the questions of fact. The instructions proceed upon the theory that the defendant was guilty of murder in the first degree, if he alone, or in company with another, wilfully, deliberately, premeditatedly, and of his malice aforethought, shot and killed the child, or was present aiding and

abetting the other person so to shoot and kill the deceased.

But it is said by another instruction, the court took away from the jury the question of fact, of deliberation and premeditation, which instruction is as follows: "The court instructs the jury, if they believe from the evidence in this case that defendant, James S. Payton, in company with some other person, was lying in wait for L. T. Mathews, with the intent of killing the said L. T. Mathews; and in the attempt to kill said Mathews, while so lying in wait, this defendant, or any other person so lying in wait in company with him, fired a shot that killed Claudie E. Mathews, then the law presumes that the said killing was done wilfully, deliberately, feloniously, and with malice aforethought." The statute provides that "every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, and premeditated killing, * * * shall be deemed murder in the first degree." Sec. 1232, R. S. 1879. If there be then a murder at common law, and that murder be committed either by means of poison, or by lying in wait, then under the statute it is classed as murder in the first degree. State v. Wagner, 78 Mo. 644. Blackstone says if one shoots at A and miss him, but kills B, this is murder; because of the previous felonious intent, which the law transfers from one to the other. 4 Blk. Com. 200. If the defendant, then, shot at L. T. Mathews, with the intent of killing him, but missed him and killed Claudie E. Mathews, it is murder at common law. If murder at common law, and also committed by lying in wait, then, by the statutory classification, it is murder in the first degree. Now, the instruction requires the jurors to find all of these elements of murder in the first degree by lying in wait. It can make no difference that the instruction concludes by saying that the law presumes the killing was done deliber-

ately and premeditatedly, instead of saying that such a killing is murder in the first degree. It would seem to follow, if the defendant shot Mathews intending to kill him, but failed in that particular intent, and yet killed the child, the killing would still be murder in the first degree, and so it is held under like statutes. Whart. on Hom., sec. 182. The court did not err, therefore, in refusing to give the third instruction asked by the defendant. The case was either murder in the first degree or the defendant should have been acquitted.

4. The court told the jury that "reasonable doubt, as used in the instructions, means a real and substantial doubt, based upon the testimony or want of testimony in the case, and not a mere possibility of the defendant's innocence." The use of the word *real* was much criticised in *State v. Owens*, 79 Mo. 632, in defining reasonable doubt, though the judgment was not reversed on that ground. In *State v. Jones*, 86 Mo. 627, the instruction was the same as in *State v. Owens*, *supra*, and yet we did not regard the use of the word *real* as error for which the judgment should be reversed. It is to be regretted that definitions well understood should be departed from, but we cannot say there is reversible error in this instruction.

5. A further ground for a new trial is, that the jurors were permitted to separate. The evidence as to this is, that in the morning of a day during the trial, and before the cause had been submitted to the jury, and while the jurors were locked up in a room at a hotel, in charge of an officer, they called the officer and said they wanted to answer a call of nature. Two of the jurors then said they did not want to go. The officer went out with ten, leaving the other two locked up in the room, taking the key with him. On the return of the ten, the two were still locked up in the room. There is no pretense that these jurors were, or were in a situation to be, approached by any one. Under like circumstances, it

was said, in *State v. Collins*, 86 Mo. 250, that to reverse a judgment for such a separation would be trifling with the administration of the law.   No more need to be said in this case.

We find no error in the record, and the judgment must, therefore, be affirmed.   All concur.