## THE STATE v. MULHALL, Appellant.

Division Two, November 20, 1906.

1. **EVIDENCE: Rebuttal: Interest of Witness: Absence of Defendant.** It is proper to permit the prosecuting witness, in rebuttal, to detail a conversation had with a witness for defendant, in the absence of the defendant, where the witness has denied that there was any such conversation—by way of indicating the interest of the witness in the case, in order that the jury may take such interest into consideration in weighing his testimony.

2. **ASSAULT WITH INTENT TO KILL: Shooting at One, Hitting Another.** Under the statute a defendant cannot be convicted of an assault with intent to kill, by a showing that he shot at one person and hit another. To establish the offense denounced by the statute two things are essential: first, that defendant shot at the person upon whom the assault is charged to have been made; second, that he did so with intent to kill *him.* (Overruling State v. Jump, 90 Mo. 171, and State v. Montgomery, 91 Mo. 52.)

3. —————: —————: **Wounding Prosecutor.** A wounding of the prosecuting witness is not essential to the crime of assault with intent to kill. For the purpose of showing the intent of the defendant, the wounding of the person charged to have been assaulted may be shown; but the crime itself, according to the statute, is just as complete without the wounding as with it. Hence, unless the wounding was the result of the acts named in the statute as constituting the offense, that is, that defendant shot at the person named in the information with the intent to kill *him,* there can be no conviction of an assault with intent to kill.

4. —————: —————: —————: **Case Stated.** Where defendant was charged with having shot at Morgan with intent to kill him, he cannot be convicted of that crime by a showing that he got into a difficulty with Reed and shot at Reed and in doing so wounded Morgan, a bystander.

5. —————: —————: **Murder: Distinction.** Because a defendant who in attempting to kill one person kills another may be convicted of murder, is no reason for holding that a defendant who shot at one person with intent to kill him may be convicted of an assault upon another with intent to kill that other. There is a clear distinction. The crime of an assault with intent to kill is statutory, and the statute says that, "Every person who shall . . . shoot at or stab another . . . with intent to kill . . . such person . . . shall," etc.

6. —————: —————: **Instruction.** Where defendant is charged with an assault upon Morgan with intent to kill Morgan, the court should avoid submitting the case to the jury upon the erroneous theory that if defendant assaulted Reed with intent to kill him and in the commission of such offense he wounded Morgan, he may be convicted of an assault with intent to kill Morgan.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster,* Judge.

REVERSED AND REMANDED.

*T. J. Rowe* and *Henry Rowe* for appellant.

(1) The court erred in permitting the State in rebuttal and over defendant's objection to contradict with the testimony of Ernest Morgan the testimony of the witness Williams on a matter immaterial to the issue on trial; the answer of said witness on such immaterial matter being conclusive. (a) A witness cannot be cross-examined as to a collateral matter merely for the purpose of contradicting him. 1 Greenleaf, Evid. (13 Ed.), 449; Roscoe's Crim. Evid., 181; Feltner v. Commonwealth, 64 S. W. 959; Caskey v. City of La Belle, 101 Mo. App. 590; Bank v. Bank, 68 S. W. 497; Rupe v. State, 61 S. W. 929; McKern v. Calvert, 59 Mo. 243; Bank v. Murdock, 62 Mo. 70; McFadin v. Catron, 120 Mo. 252; State v. Rogers, 108 Mo. 202; Harper v. Railroad, 47 Mo. 567. (b) When a witness on cross-examination is asked any question on a matter immaterial to the issue on trial, his answer is conclusive and cannot be contradicted with a view of impeaching him. 1 Green., Ev. (13 Ed.), 449; Roscoe's Crim. Ev., 181; St. Louis Gas Light Co. v. Fire Ins. Co., 33 Mo. App. 348; Lohart v. Buchanan, 50 Mo. 201; Bank v. Murdock, 62 Mo. 745. (c) A witness may not be impeached as to testimony irrelevant to the issue. 1 Green., Evid. (13 Ed.), 449; Roscoe's Crim. Evid., 181; Lankster v. State, 72 S. W. 388; Railroad v. Foster, 68 S. W. 299; Railroad v. Reesl, 5 C. C. A. 510. (2) Instructions 1 and 2 are erroneous, because they are not predicated upon evidence. There is no evidence that defendant made an assault upon Ernest Morgan. The undisputed and uncontradicted evidence is that he made an assault upon Frank Reed. The said instructions are also misleading. (3) Instruction 3 is clearly erroneous because it declares that if defendant intend-

ed to kill Ernest Morgan it is no defense if he also intended to kill Frank Reed.

*Herbert S. Hadley,* Attorney-General, and *John Kennish,* Assistant Attorney-General, for the State.

(1)   The court did not err in admitting the testimony of Ernest Morgan in rebuttal. The only fact testified to by Morgan when recalled, in addition to the impeaching testimony, was that when Reed was backing towards him and away from the defendant he, Reed, did not have his hands thrown around to his pocket as though trying to draw a gun. This evidence was in contradiction of the evidence for the defendant, and was, therefore, competent in rebuttal. But whether properly rebuttal evidence or not, it was competent, and ''it is within the discretion of the trial court to receive, by way of rebuttal, evidence which should have been introduced as original evidence.'' State v. Brown, 63 Mo. 439.   (2) The court fully and correctly instructed the jury on all questions of law arising under the evidence, and the defendant having been given a fair trial, and there being no prejudicial error in the record, we respectfully ask that the judgment be affirmed.

FOX, J.—This cause is here upon appeal by the defendant from a judgment of the circuit court of the city of St. Louis convicting the defendant of an assault with intent to kill.   Omitting formal parts, the information upon which this judgment of conviction is based charges:

''That Zach Mulhall, on the eighteenth day of June in the year of our Lord, one thousand nine hundred and four, at the city of St. Louis aforesaid with force and arms, in and upon one Ernest Morgan feloniously, wilfully, on purpose and of his malice aforethought, did make an assault; and the said Zach Mulhall, with a cer-

tain weapon, to-wit, a pistol loaded with gunpowder and leaden balls, then and there feloniously, wilfully, on purpose and of his malice aforethought did shoot off, at, against and upon the said Ernest Morgan, then and there giving to the said Ernest Morgan with the pistol aforesaid one wound, with the intent then and there him the said Ernest Morgan feloniously, wilfully, on purpose and of his malice aforethought to kill; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.''

To this charge there was waiver of formal arraignment and plea of not guilty, and at the December term, 1904, the defendant was put upon his trial.

In order to determine the legal propositions presented by the record in this cause, it is only necessary to make a brief statement of the facts developed upon the trial.

On the part of the State the testimony tended to show that in the month of June, 1904, the defendant was connected with what was known as a Wild West Show giving exhibitions at the World's Fair in the city of St. Louis. The prosecuting witness, Ernest Morgan, who was about eighteen years of age, testified that he resided in the city of St. Louis, and on the 18th day of June, 1904, was in attendance at the World's Fair, and at about nine o'clock in the evening of that day went to the Cummins' Wild West Show. According to his testimony the show concluded about ten o'clock and he started to leave the building. As he was going out of the show he saw about four or five men directly in front of him engaged in a scuffle and then he heard a shot. He immediately turned to go back and get away and when he had gone back four or five steps he heard a second shot. He turned around to see where the shots came from and saw the defendant a short distance away, holding a gun in his hands and pointing it directly towards him, the prosecuting witness; then a

third shot was fired which prosecuting witness says struck him and he fell to the ground dangerously wounded. Prosecuting witness testified that he knew the defendant, having seen him in a show before and at five or six different times in the two or three years preceding the shooting. This witness further testified that when he saw the defendant pointing the revolver towards him he saw a man backing away from the defendant towards and very near to where the prosecuting witness was standing, and that the defendant was looking directly in the direction of Morgan, the prosecuting witness, and that the man who was backing away from defendant had his back toward Ernest Morgan and was slightly to one side, but nearly in line and between defendant and Morgan. After the shooting the defendant went through some adjoining buildings and was making his way toward the rear of the yard of the Siberian Railway building when arrested. When the defendant was arrested he had in his possession a 38-calibre Smith & Wesson revolver, long barrel. The bullet taken from Morgan's hip was a "38 Long Colt," also known as a 38-calibre Colt bullet. Prosecuting witness at the hospital, the defendant being brought into his presence, identified him as the man who fired the shot. He also identified him at the trial.

The defense interposed in this case is that whatever shots were fired by defendant were at a man by the name of Frank Reed, and that thy were fired in proper defense of his person. On the part of the defense there was evidence tending to prove that after the Wild West Show was over, between ten and eleven o'clock, the defendant and three or four friends together started to leave the show and go out on what was called the Pike, and that the defendant's attention was called to the fact that Frank Reed might undertake to kill him. There was testimony tending to show that Reed and the defendant had had previous trouble and that Reed had made threats against the defendant. As the

defendant with these other parties was walking toward the exit of the show ground and near the outer gate someone hollowed, "Look out, Colonel," and the defendant claims that he observed Reed starting to draw his pistol, and that he drew his revolver and threw it into the face of Frank Reed; then a scuffle ensued and there were three shots fired from the pistol of the defendant, one of the shots striking Reed. L. S. Corbett and George H. Williams, two of the parties with the defendant, both testified as to the trouble between Reed and the defendant. Corbett testified to seeing during the trouble, a stout, heavy-set man and saw in his hand what appeared to him to be a Derringer pistol pointing toward Mulhall. He also testified to several shots being fired but did not state positively as to who fired the shots. Witness Williams testified as to the scuffle and that there were several shots fired, and that he saw Mr. Reed during the time working for his gun. He further testified as to a conversation between himself and the prosecuting witness, but as to such conversation there was a conflict between the testimony of the prosecuting witness and Williams and Corbett. There was also a conflict in the testimony offered by the State and the defendant as to the manner of the shooting and the position of the parties.

The defendant, Zach Mulhall, testified in his own behalf. He testified that he saw the prosecuting witness after he was wounded that night and states that he never saw him before that time to his knowledge or recollection. He gives his version of the difficulty as follows:

"Q. Now, Mr. Mulhall, just state all that occurred with reference to this shooting from the time that you left the show up to the time that you were brought in the presence of Morgan? A. I left the show after the show was over, and went to the dressing room to change my clothes. I had been told several times that evening that Reed had made a threat that he was going

to kill me. Well, I didn't pay much attention to it, I didn't care anything about it. He had made several of those kind of threats to the cowboys there, and had been put in jail for it on one of two occasions, and tried for it. And after the show was over, I changed my clothes, and I walked down the entrance to the Pike with Mr. Williams—the two, Mr. Williams and Mr. Corbett, and that was all, I think, three of us—and myself. And on our way down Johnny Murray and another cow puncher by the name of Jourdan says, 'Yes, you better look out for him. He says he is going to kill you.' I never expected he would. I didn't care; I didn't think anything of it. Just before I got out of the entrance I saw him standing up alongside of one of the pillars, and just as I got my eye on him he put his hand behind him for his six-shooter, and I grabbed and throwed a six-shooter in his face, and told him to stop it. And Johnny Murray and he grabbed my gun and they both had a hand apiece on it, and he had his hand on the gun back in his hip pocket. I had one of my hands on this gun, and with the other I reached over and got his hand and jerked it away from it and slapped it down on this gun of mine and held it there and in the tussle this gun of mine went off and hit Johnny Murray, and when I hit Johnny Murray, he fell back.

"Q. That was the first time that the gun exploded? A. Yes, sir.

"Q. That the cartridge exploded? A. Yes, sir.

"Q. Where did it strike Murray? A. Hit him right in here and out right below the nipple (indicating). Then he fell back and that let me loose, and I jerked the gun on Reed and told him to stop, and he pulled his gun—he was reaching for it all the time. It seemed he couldn't get it out.

"Q. Did you see the gun at the time? A. I never saw it, no, sir. I never fired until I did see it. And he

had some difficulty in getting the gun out of his pocket and I told him to stop. I says, 'Quit now, quit.' And he couldn't get it out; and he reached both hands around for the gun, and when he pulled it I·throwed the six-shooter at him and shot him in the arm. I had aimed at his arm, and broke his arm. When I hit him he jerked the gun in his hand (indicating) and pulled down on me, and I pulled down on him.

"Q. Did the second shot hit him again? A. Yes, I hit him again.

"Q. Where? A. Right in the neck there (indicating).

"Q. Your gun exploded three times, the first time it went off as you were scuffling, the second time it struck Reed in the arm? A. Yes, sir.

"Q. And the third time it struck him in the neck? A. Yes, sir.

"Q. How large a man was Reed? A. I think Reed was about my size.

"Q. Well, about what height are you? A. About five feet ten and a half, weight about 190. He might have weighed 200, I don't know— about 190 or 195 pounds.

"Q. How often did Reed shoot at you, do you know? A. Reed shot at me three times.

"Q. Was there any other shooting besides that? A. There was other shooting, yes, sir.

"Q. Now, was there anyone in the line between you and Reed in the rear of Reed at that time that you shot the third shot or the second shot, either one of those times? A. Not a soul, anyways in line with Reed and myself—that is, my line to Reed, not a soul.

"Q. Had any threats been communicated to you that Reed had made about you, about 'doing you up' or killing you? A. Yes, sir, he made open threats there that evening that he was going to kill me."

There was testimony offered in rebuttal by the State that when Reed was backing away from the de-

fendant he was not trying to get a pistol out of his pocket, and other testimony which was in conflict with that offered by the defendant.

This is a sufficient indication of the nature and character of the testimony offered upon which this cause was submitted to the jury. At the close of the evidence the court instructed the jury.

The record discloses that counsel for appellant properly preserved objections and exceptions to each and all of the instructions given by the court for the reason that each and all of said instructions are erroneous. Further objections and exceptions were preserved to the failure of the ocurt to fully instruct the jurors on all questions of law arising in the case necessary for their information in the determination of the cause. We deem it unnecessary to reproduce here in full the instructions given by the court. They will be given proper attention during the course of the opinion.

The cause was submitted to the jury upon the testimony introduced and the instructions of the court, and they returned a verdict finding the defendant guilty of an assault with intent to kill without malice aforethought, and assessed his punishment at three years imprisonment in the penitentiary. Timely motions for new trial and in arrest of judgment were filed by the defendant and by the court taken up and overruled. From the judgment and sentence entered in this cause the defendant prosecutes his appeal to this court and the record is now before us for consideration.

OPINION.

The record in this cause presents numerous complaints of error on the part of the appellant as grounds for the reversal of the judgment in this cause; however, it is manifest from a careful analysis of the record before us that the most vital and important questions are presented in the sixth and eighth grounds alleged in the motion for new trial, which are as follows:

"SIXTH. The court erred in permitting the pros-

ecuting witness, Ernest Morgan, in rebuttal, to testify to conversations with one George H. Williams, when defendant was not present.

"EIGHTH. The court gave erroneous illegal and improper instructions."

It is the propositions involved in these two compaints of error to which learned counsel for appellant in his brief particularly calls our attention; we shall therefore direct our attention to the consideration of the propositions as suggested and indicated above.

## I.

It is sufficient to say upon the complaint that the court erred in permitting the prosecuting witness, Ernest Morgan, in rebuttal, to testify to a conversation with one Geeorge H. Williams when the defendant was not present, that we have examined the record as to the conversation referred to and are of the opinion that there was no error in the admission of this testimony. The record discloses that Williams was a friend and witness for the defendant, and while on the stand, evidently for the purpose of showing his interest in the case and for the purpose of affecting the weight of his testimony, he was asked upon cross-examination if he did not say to Morgan at the hospital, soon after the shooting, "that a brother of his had seen the shooting, but that he hadn't;" that he stated to Morgan in the conversation that he "called to see how he was getting along and as soon as he was well enough he wanted him to go to Texas with him and that he would make a man of him." The witness stated that he had no such conversation. This witness having denied any such conversation, there was no error in the court permitting the prosecuting witness to contradict him and state in fact what conversation occurred. It is true the defendant was not present, but this testimony was simply admissible for the purpose of indicating the interest of the witness in the case, that the jury might take such fact into consideration in weighing his testimony.

## II.

This brings us to the consideration of the most serious proposition with which we are confronted by the record in this cause, that is, that the court gave erroneous, illegal and improper instructions to the jury. This proposition necessitates a most careful consideration of the section of the statute upon which this prosecution is based as well as the tendency of the testimony introduced at the trial, and the theory upon which this cause was submitted to the jury by the instructions of the court.

The information in this cause is predicated upon section 1847, Revised Statutes 1899, which provides: "Every person who shall, on purpose and of malice aforethought, shoot at or stab another, or assault or beat another with a deadly weapon, or by any other means or force likely to produce death or great bodily harm, with intent to kill, maim, ravish, or rob such person, or in the attempt to commit any burglary or other felony, or in resisting the execution of legal process, shall be punished by imprisonment in the penitentiary not exceeding ten years."

It is apparent from the instructions given by the court that this cause was submitted to the jury upon two theories: First, that the defendant shot at and assaulted the prosecuting witness, Ernest Morgan, with intent to kill him; second, that he shot at and assaulted one Frank Reed with the intent to kill him, and in making such assault upon Frank Reed shot and wounded the prosecuting witness, Ernest Morgan. The first theory is indicated by instruction numbered 1, which in plain and unambiguous terms required the jury to find that the defendant wilfully, on purpose and with malice aforethought did shoot at and wound Ernest Morgan with the intent to kill him. The second theory is clearly manifested by instructions numbers three and four, in which the court declared the law as follows:

"Third. If from the evidence and under these instructions you find and believe that the defendant, Zach Mulhall, on purpose and of his malice aforethought and with the intent to kill, and under the circumstances set out in instruction No. 1 above, shot and wounded Ernest Morgan, then it is no defense that his intent to kill may, as a matter of fact, have been against one Frank Reed, and that his desire was to assault Frank Reed rather than Ernest Morgan, for if a man with intent to kill one person wilfully, unlawfully and on purpose and of his malice aforethought shoots to accomplish such intent, but as a matter of fact the bullet flies towards and strikes and wounds another whom he did not intend to injure, he is guilty of the same offense as though the bullet had struck and wounded the one whom he intended to kill.

"Fourth. Unless from the evidence and under these instructions you believe and find that defendant, Zach Mulhall, on or about the 18th day of June, 1904, or at any time within three years next before the filing of the information herein, at the city of St. Louis and the State of Missouri, did wilfully, on purpose, and of his malice aforethought, shoot and wound Ernest Morgan with a pistol, loaded as aforesaid, and with the intent to kill him, or did at said time and place wilfully, on purpose, and of his malice aforethought, and with the intent to kill Frank Reed, shoot to accomplish such intent and that the ball struck and wounded Ernest Morgan then you will acquit the defendant."

This last theory is further indicated by instruction numbered 5, which was one upon the right of self-defense, in shooting at and assaulting Frank Reed. In other words, that instruction, practically construed, means this, that if the jury believe and find from the evidence that the shooting was at Frank Reed with intent to kill, but that the prosecuting witness, Ernest Morgan, was wounded, although he was not in fact shot at, unless the jury reached the conclusion that the de-

fendant Mulhall was justified in shooting at Reed, they could not acquit the defendant on the charge contained in the information, for shooting at Ernest Morgan.

It is made manifest, from the declarations of law in this case, that the trial court took the position that it made no difference, so far as the commission of the offense defined by section 1847 is concerned, whether the defendant shot at the prosecuting witness and wounded him, with intent to kill him, or whether he shot at Frank Reed without justification, with intent to kill him, and in the commission of such wrongful act the prosecuting witness was wounded—under either state of facts the defendant would be equally guilty of the offense defined by the statute.

We are unable to give our assent to that position.

It will be observed that this charge is predicated upon that subdivision of the statute which provides that "every person who shall on purpose and of his malice aforethought shoot at . . . another with intent to kill." In other words, the information charges that the defendant, Zach Mulhall, shot at Ernest Morgan, with a pistol with the intent to kill him. It is clear that under that provision of the statute, there are two essential elements necessary to constitute such offense: First, that the defendant shot at Ernest Morgan, and, second, that he did so with intent to kill him, and before a conviction can be had upon this charge it is incumbent upon the State to establish by the proof both elements of such offense. It is not enough that the defendant shot at Ernest Morgan, but as well that at the time of such shooting he intended to kill him. The fact that Ernest Morgan was seriously wounded, and such wound may have been occasioned by a shot from the pistol of the defendant is not enough, for the fact that he was so wounded must not be confounded with the essential elements to constitute the offense with which he is charged. While the wound may be shown in evidence and its character for the purpose of establishing the

essential elements of the crime, that is, that he shot at him with intent to kill, yet such wounding does not constitute any part of the offense. The charge of the offense is complete when it is alleged that the defendant shot at Ernest Morgan with a pistol with intent to kill him. As was said by Sherwood, J., in State v. Agee, 68 Mo. 264, "It is as much an offense under the law to shoot at a man and miss him, as to shoot at him and hit him." While, as before stated, the wounding of Ernest Morgan was competent evidence for the jury to consider in determining the intent of the defendant, yet such wounding does not constitute any essential element of the offense, and unless such wounding was the result of the commission of the acts necessary to constitute such offense as defined by the statute, that is, that he shot at Ernest Morgan with the intent to kill him, then there can be no conviction for an assault with intent to kill.

The Supreme Court of California in the case of People v. Keefer, 18 Cal. 636, clearly announced the principle applicable to the case at bar. In that case the defendant was indicted for an assault with intent to murder one John R. Evans, and convicted of the crime of an assault with a deadly weapon with intent to do great bodily harm. The trial court instructed the jury that if a loaded gun was presented within shooting range at Wilson or Evans, or at the dog, under circumstances not justified by the law, and under circumstances showing an abandoned and malignant heart, and that the gun was fired off, and inflicted a dangerous wound upon the witness Evans, then the crime of an assault with a deadly weapon, with intent to inflict a bodily injury upon the witness Evans, has been proved; and it would only remain for them to inquire whether or not the defendant was guilty of the crime. The pertinency of this charge, as we gather from the case, was shown by proofs which conduced to prove that Keefer fired a gun in the direction of Wilson and

Evans and of a dog near them, there being some dispute as to whether with the intent to kill or wound the dog or these men, or one of them.    BALDWIN, J., who delivered the opinion of the court in that case, in discussing the correctness of the instructions of the trial court, said: "It is true that a person may be convicted of murder or of an assault, though no specific intent may have existed to commit the crime of murder or assault upon the person charged.    The familiar illustration is that of a man shooting at one person and killing another.    In these cases the general malice and the unlawful act are enough to constitute the offense.    No doubt exists that a man may be guilty of manslaughter under some circumstances by his mere carelessness. But this rule has no application to a statutory offense like that of which the defendant was convicted.    This is an assault with a deadly weapon, with intent to do great bodily harm to another person.    The offense is not constituted in any part by the battery or wounding, but is complete by the assault, the weapon and the intent—as, if A snaps a loaded pistol at B, within striking distance, the offense would be no more under this clause of the statute if the shot took effect.    It could scarcely be contended, if a man shot at another's dog or chicken, when such shooting would be a trespass and wholly illegal, that the trespasser was guilty of this crime of assault upon a man with intent, etc., merely from the fact that the owner of the animal was near by and within range of the shot, or the shot went through his hat or clothes; and yet the reason of holding thus in that case is as great as in this.    So, if a man carelessly handling bricks on the roof of a house should throw them into the street below, though he might be liable, civilly and criminally, for injury done to persons thereby, he could not be guilty of the statutory offense of assault with intent to kill.    The words of the statute 'with intent to do great bodily harm to a person' (Wood's Dig. 335), are not merely formal, but

they are substantial—they constitute the very grava-
men of the offense; and the statute, like all other penal
laws, must be strictly construed.   It is nothing in this
view that the defendant is guilty of some crime; he
must be guilty of the very crime charged, which cannot
be unless the elements of the crime, as defined by the
Legislature, appear.   This is the universal rule appli-
cable to criminal proceedings; and it is as plainly sup-
ported by common sense as by technical law.   We can-
not make the proposition plainer by illustration.''

So it may be said as to the case at bar.   If the de-
fendant shot at Ernest Morgan with a pistol, with the
intent to kill him, and missed him, the offense would be
just as complete if such shot had taken effect; and on
the other hand, if he did not shoot at him and did not
intend to kill him, although he may have wounded him
in the commission of some other unlawful act, there
being an entire absence of the necessary elements of
the offense as defined by the statute, that is, that he
shot at him with a pistol with the intent to kill him,
there could be no conviction of that statutory offense.

The fundamental error assumed by the contention
on the part of the State in this prosecution, is the con-
founding of the purely statutory offense of an assault
with intent to kill which is defined by the statute to be
the commission of certain acts with a specific intent,
with that line of cases where the party shoots at one
man and kills another.   There is no dispute as to the
law applicable to cases where the party is killed.   In
those cases the common law rules are strictly applied,
and the text-writers and the rules announced by this
court, as well as the courts in all other States where
the question has been brought before them, are uni-
form in announcing the principle that ''where the party
shoots at one man and kills another, malice will be im-
plied as to the latter, and the felonious intent is trans-
ferred on the same ground as where poison is laid to
destroy one person and taken by another;'' and with

the rules announced in the leading cases in this State upon that subject, State v. Payton, 90 Mo. 220; State v. Gilmore, 95 Mo. 554; State v. Pollard, 139 Mo. 220, and State v. Clark, 147 Mo. 20, we are entirely satisfied. But on the other hand, that there is a clear distinction between those cases where the common law rules are most strictly applied, and the clearly defined statutory offense of an assault with intent to kill by shooting at another with a pistol, with intent to kill, we have no doubt, and the appellate courts of the various States that have had this question before them and the question sharply presented and carefully considered by such courts have in no uncertain terms recognized such distinction.

As was said by the California court in the Keefer case, "if a man carelessly handling bricks on the roof of a house should throw them into the street below, though he might be liable, civilly and criminally, for injury done to persons thereby, he could not be guilty of the statutory offense of an assault with intent to kill." No one, however, would contend for a moment that, if the bricks thrown from the house into the street should have killed an individual, the party could not have been charged with some grade of crime for causing the death of the individual. The offense with which the defendant in this case is charged is clearly defined by the statute, consisting of shooting at another with intent to kill him, and he cannot be guilty of such offense unless the elements of the crime defined by the lawmaking power appear.

The High Court of Errors and Appeals of the State of Mississippi had in judgment before it the case of Morgan v. State of Mississippi, 21 Miss. (13 S. & M.) 242, which is so strikingly similar to the case at bar, upon a statute substantially the same as the statute upon which the prosecution in this case is based, that we cannot better discuss this proposition than by reproducing at length the rules so clearly announced in

that case. The provisions of the Mississippi statute upon which the charge against the defendant in that case was predicated, were that "every person who shall be convicted of shooting at another, with the intent to kill, maim, etc., such other person, shall be punished by imprisonment in the penitentiary for a term not exceeding ten years." Mr. Justice SMITH thus stated the case in discussing the legal propositions involved:

"Upon the trial of the issue, the prisoner, by his counsel, requested the court to charge the jury, 'that, under this indictment, it is necessary for the prosecution to prove that said defendant shot at Foster (the person on whom the assault was alleged to have been committed) with the intent to kill said Foster, before the defendant can be legally convicted.' This instruction was refused; whereupon the counsel for the State requested the court to charge the jury as follows:

"1. 'That if the jury believe, from the evidence, that the prisoner shot into the crowd, with the intention of killing any one in the crowd, but not with the intention of killing Foster; and that the shooting was not, at the time, in the necessary self-defense of the prisoner, they should find him guilty.

"2. 'That if the jury believe that Morgan shot at Loftin with a premeditated design to kill him, Loftin; and that said shooting was not in the necessary self-defense, although he missed Loftin and shot Foster, they should find him guilty, though he entertained no malice towards Foster.'

"The correctness of these instructions presents the first question for the consideration of this court; and it is obvious that if the former be correct, the latter must be erroneous.

"It is a universal principle of evidence, that a man shall be understood to intend that which he does, or which is the natural and necessary consequence of his act. Hence, in the absence of any explanatory testimony, we should be bound to presume that the prisoner

intended to perpetrate the assault charged, upon the person of Foster; and to hold the offense as charged clearly made out.    But the instructions asked for, as well by the State as the prisoner, clearly show that evidence had been adduced on the trial, which tended to establish the fact that Loftin, and not Foster, was the object of the assault.    The instruction, then, did not propound abstract propositions, which could in nowise affect the verdict of the jury.

"It is a well-understood rule of law, where a general felonious intention is sufficient to constitute the offense, that it is no ground of excuse, where a party who intended to commit one felony had committed another.    [2 Stark., Ev. (5 Am. Ed.), p. 416; East, P. C., 514.]

"In the case at bar, the malicious intent might be clearly inferred from the character of the weapon used; and if the alleged attempt had been consummated in the death of Foster, the prisoner would have been guilty of murder, although he entertained no malice as to him.    This principle, however, is applicable only to cases where one felony is contemplated, and another committed.    But the offense of which the prisoner stands convicted, is, we apprehend, no felony by the laws of this State.    If, however, the offense here charged be in fact a felony, nevertheless this rule does not apply; for an essential ingredient of the offense created by the section of the statute above quoted, and charged in the indictment, is the specific intention of killing the person shot at.    In the case of Jones v. State of Mississippi, 11 S. & M. 315, this court expressly recognized this construction of the act.    They say this statute 'specifies the intent to kill the person shot at as one of intents made essential to constitute the offense.'    The same construction has been given by the English courts to the statute of 9 Geo. 4, ch. 31, sec. 11 and 12, which is similar to our own (Rex v. Holt, 7 Carr. & Payne 518); and we hold it to be correct.

"If, then, the specific intention of killing the particular person alleged to have been shot at be 'an essential ingredient of the offense charged in the indictment,' proof of general felonious or malicious intention was not sufficient. It was incumbent on the State to prove the specific intent as charged. [2 Stark., Ev. (5 Am. Ed.), p. 416, note S; 7 Carr. & Payne 518.] The charge requested by the prisoner's counsel was correct, and the court erred in refusing it."

The Court of Appeals of Kentucky, in the case of Commonwealth v. Morgan, 74 Ky. 601, ruled that, under a statute which provided that "if any person shall wilfully and maliciously shoot at and wound another with an intention to kill him," in order to warrant a conviction for such offense it was essential to prove all of the elements constituting the offense. In that case the defendant shot and wounded one W. T. Buntin. The indictment and proof showed that he shot at one Asa Oliver, and not at the prosecuting witness. The representative of the State, upon the facts developed upon the trial, requested the following instruction:

"If the jury believe from the evidence, beyond a reasonable doubt, that in Anderson county, and before the finding of this indictment, the accused, North Morgan, wilfully and with malice aforethought shot at Asa Oliver with the intent to kill him, and, missing his aim, wounded W. T. Buntin, then he is guilty of malicious wounding; and so they must find, and fix his punishment at confinement in the penitentiary for not less than one nor more than five years," which was refused by the court.

In discussing the action of the court in refusing this instruction, Judge LINDSAY, speaking for the court, said: "The statute provides that 'if any person shall wilfully and maliciously shoot at and wound another with an intention to kill him, so that he does not die thereby, with a gun or other instrument loaded with a leaden bullet or other hard substance . . . he shall

be confined in the penitentiary not less than one nor more than five years.' The language of the statute does not embrace the offense for which the appellee was put upon his trial. To constitute the statutory crime it is necessary that the party accused 'shall willfully and maliciously shoot at and wound another, with an intention to kill him.' Here he did not wound the person at whom he shot, on the one hand; nor did he shoot at the person whom he did wound, on the other. The two facts essentially necessary to constitute the felony do not conjoin, and hence the instruction asked for was properly refused.''

In Jones v. State of Mississippi, 11 S. & M. 315, which was referred to and approved in the case cited, of Morgan v. The State of Mississippi, the objection was urged that the intent was not sufficiently averred, in this, that the act was not alleged to have been done with the intention of killing some particular person. The statute in judgment in that case was substantially the same as the statute upon which the case at bar is predicated. The court, in discussing that case, said. ''The objection is, that the intent is not sufficiently averred, in this, that the act is not alleged to have been done with the intention of killing the said Mixon or any other person. The statute (H. & H. 698, sec. 33), quoted above, specifies the intent to kill the person shot at, as one of the intents made essential to constitute the offense. Such being, probably, the main intent in this case, the indictment should have charged that intent. [Rex v. Gillow, 1 Moody 85; Rex v. Duffin, Russ. & Ry. 365.] The indictment is uncertain. There is no allegation of an intent to kill any particular person. In Rex v. Holt, 7 Carr. & Payne 518, the indictment, framed under the statute 9 Geo. 4, c. 31, secs. 11, 12, was for shooting 'at one John Hill, with intent to murder the said John Hill.' The jury found the prisoner

guilty of shooting at Mr. Hill, with intent to do Mr. Lee some grievous bodily harm. The court ordered a verdict of not guilty to be recorded. To come, therefore, within this statute, we think the accused must be charged with having shot at a certain person, with intent to kill that person."

In the case of Morman v. State of Mississippi, 24 Miss. l. c. 57, the rules as announced in the foregoing cases of Morgan v. State, and Jones v. State, supra, were followed and approved. To the same effect is Barcus v. State, 49 Miss. 17.

In People of the Territory of Utah v. William L. Robinson, 6 Utah 101, it was expressly ruled that "where the indictment charged that defendant assaulted H. with a pistol and shot at H. with intent to kill him, and the evidence showed that defendant shot at J. intending to kill J., but accidentally hit H. because he missed J., a conviction for assault with intent to kill cannot be sustained."

In the Supreme Court of Arkansas, in Lacefield v. State, 34 Ark. 275, the rules announced in the foregoing cases were followed, and it was held by that court that "when one, intending to kill A shoots and wounds B, or if it be doubtful which he shoots at, he cannot be convicted of an assault with intent to kill B."

The rules of law so clearly announced in the foregoing cases cited, in our opinion, correctly announce the law as applicable to the offense of an assault with intent to kill. The principles announced in those cases are predicated upon statutes substantially the same as the one upon which the offense at bar is predicated; however, upon this proposition we are confronted with two cases in this State directly in conflict with the conclusions herein reached, State v. Jump, 90 Mo. 171, and State v. Montgomery, 91 Mo. 52. Doubtless the learned trial judge, recognizing the rule that the decisions of this court furnish a rule to govern as well as to guide,

followed those cases and submitted this cause to the jury upon the theories as indicated by the instructions.

It is apparent from an examination of those two cases that the proposition confronting the court was not discussed. In neither of them were any briefs filed by the appellant, and a careful analysis of those cases makes it manifest that the distinction between murder cases and cases of assault with intent to kill, defined by the statute, was not sharply presented to the court for their consideration. This is made apparent by the citation of authorities in support of the rules announced. In support of the Montgomery case, the case of State v. Henson, 81 Mo. 384, and State v. Payton, 90 Mo. 220, are cited as expressly approving the principles announced. In State v. Jump, no authorities are cited, and the learned and esteemed judge simply says that if some point is overlooked the defendant has no right to complain for the reason that no suggestions by brief or otherwise are made as to the questions involved. The cases of State v. Henson and State v. Payton, supra, cited in support of the conclusions reached in the Montgomery case, were murder cases, and therefore in accordance with the conclusions as herein reached are not applicable to the offense charged in the case at bar.

We have endeavored to point out the distinction that should be observed in the application of the rules of law between cases of murder or manslaughter and the offense of an assault with intent to kill as defined by the statute. The cases cited as supporting the conclusions we have reached in this cause had in judgment the identical question under substantially the same statutory provisions as are involved in the case at bar, and the rules announced in those cases upon which we predicate our conclusions, are fully supported by both reason and authority. The learned judges who wrote the opinions in the Montgomery and Jump cases, here-

tofore referred to (there being no presentation by brief or otherwise of the propositions involved) doubtless concluded that the same rules of law were applicable to those cases as had previously been applied to cases of murder or manslaughter, and we are convinced that had the question been sharply and fully presented to the court in those cases, the same conclusions would have been reached as is herein indicated in the case at bar.

After diligent search we are unable to find any authority in support of the rules announced as applicable to the Jump and Montgomery cases by this court, except the principle announced applying to murder cases, and we have heretofore pointed out the distinction between those two classes of cases. With the greatest deference and respect for the opinions of the learned judges who announce the conclusions in the Jump and Montgomery cases by this court, we are unable to concur with their views and after a full discussion and consideration of the proposition confronting us and a careful examination of the authorities upon the subject, we are convinced that the conclusions reached in those cases are unsound and not supported by well-considered authority; therefore, they should no longer be followed as announcing the correct rule applicable to the question in the case at bar.

The conclusions reached upon this proposition by no means relieve the defendant of punishment, if he is guilty of the commission of a wrongful act. The statutes of this State cover every phase of this case. First, if the defendant shot at Frank Reed without being justified, with a pistol with the intent to kill him, the State may proceed against the defendant upon that charge. Second, if the defendant, without being justified, made an assault with a pistol upon Frank Reed, and in the commission of such unlawful act maimed, wounded or disfigured Ernest Morgan, and such wound was inflicted under circumstances which would

have constituted murder or manslaughter if Ernest
Morgan had died, the defendant may then be prose-
cuted under the provisions of section 1849, Revised
Statutes 1899; and, third, if the testimony on the part
of the State is sufficient to show that the defendant shot
at Ernest Morgan with intent to kill him, as charged
in the information in this prosecution, the defendant
may be prosecuted and convicted of that offense. How-
ever, if it is sought to convict the defendant under this
information for shooting at Ernest Morgan with the
intent to kill him, as indicated from the conclusions
reached in this cause, the court should avoid submitting
the cause to the jury upon the erroneous theory that
if he assaulted Frank Reed with intent to kill him and
in the commission of such offense he wounded Ernest
Morgan, he might be convicted of an assault with in-
tent to kill Ernest Morgan.

The statute defining the offense of an assault with
intent to kill by shooting at another with intent to kill,
should be held to mean what it says, and to constitute
such offense and authorize a conviction of the defend-
ant for shooting at Ernest Morgan with intent to kill
him, it is essential that both elements of that offense
be established by the testimony in the cause; first, that
he shot at Ernest Morgan; secondly, that he did so with
the intent to kill him. This is the only practical and
common-sense interpretation of the statute which de-
fines the offense with which the defendant is charged.

We have thus indicated our views upon the most
vital propositions involved in this prosecution. It was
error on the part of the court to submit this cause to
the jury as indicated by the instructions heretofore
pointed out, upon the theory that the defendant shot at
Frank Reed with intent to kill him and in the commis-
sion of that act wounded Ernest Morgan, and instruct-
ing the jury that upon that state of facts they would be
warranted in convicting the defendant of an assault
with intent to kill Ernest Morgan, as charged in the

information.   For this error the judgment should be reversed and the cause remanded for the purpose of giving the State an opportunity of proceeding against the defendant in accordance with the views herein expressed, and it is so ordered.

All concur.